WILLIAM WITVOET *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* WILLIAM QUINLAN *et al.*, Defendants-Appellees.—(THE CITY OF CHICAGO, Counterplaintiff-Appellee.)

First District (5th Division)    No. 62382

Opinion filed August 27, 1976.

James A. Witvoet, of St. Anne, for appellants, *pro se.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order denying their request for an injunction against defendants and from an order granting defendants' request for a permanent injunction against them. On appeal they contend that both findings of the trial court were erroneous.

Sometime during 1972, and after, plaintiffs were convicted of violating various city ordinances (Chicago Municipal Code, ch. 34, §34—6; ch. 36, §§36—43, 36—49)[1] prohibiting, placing, unpacking, and sorting of goods and soliciting trade on the public ways of the City of Chicago. On appeal of those convictions (*City of Chicago v. Witvoet* (June 30, 1975), 30 Ill. App. 3d 386, 332 N.E.2d 767), we held that section 36—49.1 (Chicago Municipal Code, ch. 36, §36—49.1) was unconstitutionally vague in that it failed to clearly delineate those areas of the city where marketing was forbidden. Subsequently, the Chicago City Council designated the Maxwell Street area as the sole market in Chicago.[2] Thereafter the events transpired which led to this appeal.

---

[1] Section 34—6 of the Chicago Municipal Code provides in part:

"No person shall use any public way for the storage of personal property, goods, wares or merchandise of any kind. Nor shall any person place or cause to be placed in or upon any public way any barrel, box, hogshead, crate, package or other obstruction of any kind, or permit the same to remain thereon longer than is necessary to convey such article to or from the premises abutting on such sidewalk ° ° °."

Section 36—43 of the Chicago Municipal Code provides:

"It shall be unlawful for any person to pick, sort, pack or unpack, fruit, flowers, vegetables, rags, paper, old iron, bottles, or junk upon public way or other public place in the City."

Section 36—49 of the Chicago Municipal Code provides in part:

"It shall be unlawful for any person ° ° ° to stand upon, use or occupy the public ways to solicit trade, custom or patronage for such business, or to interfere with or impede any pedestrian or any one in a vehicle on a public way, for purpose of soliciting business.

Any such soliciting of business on any public way is hereby declared to be a nuisance and the owner ° ° ° shall be fined not less than ten dollars nor more than two hundred dollars for each and every day he shall refuse or neglect to abate such nuisance.

Provided, nothing in this section shall be construed to include any business operated wholly or entirely upon any public way or under by virtue of a lawful permit or license issued therefor."

[2] Section 35—1 of the Chicago Municipal Code as amended July 23, 1975, provides in part:

"35—1. The following public ways and no other shall be set apart and used for market purposes:

The roadways from curb line to curb line of the following streets: W. Maxwell Street from the west line of S. Union Avenue to the east line of S. Sangamon Street, except the roadway of S. Halsted Street; W. 14th Street and W. 14th Place from the west line of S. Halsted Street to the east line of S. Sangamon Street; which shall be known as the Maxwell Street Market."

The facts are not in dispute. On July 25, 29, 30, 31 and August 1, 1975, one or more of the plaintiffs arrived early (between 5 a.m. and 7 a.m.) with one or more truckloads of produce and parked on the south side of Randolph Street near the middle of the 1000 block. Diagonal parking was required (Chicago Municipal Code, ch. 27, §§27—306(b), 27—408), and was limited to one hour between 9 a.m. and 6 p.m. (Chicago Municipal Code, ch. 27, §§27-414). Plaintiffs parked their vehicles next to the curb, unloading as many as 200 bushels and crates of produce onto the street and sidewalk surrounding their truck. When unloaded the produce extended eight to ten feet into a 30-foot service drive and three to four feet into a nine-foot sidewalk. The displayed produce which included cabbages, tomatoes, cucumbers and green peppers was then sold to passing motorists and pedestrians. On all the days in question the traffic was medium to heavy.

On each date plaintiffs were arrested and charged with selling, packing and storing produce on the public way in violation of the Municipal Code (Chicago Municipal Code, ch. 34, §34—6; ch. 36, §§36—43, 36—49.) Further, on certain dates their children were arrested, their trucks were towed, and their produce was seized and destroyed.

On August 1, 1975, plaintiffs filed a petition for injunctive relief alleging the enforcement procedures employed by police were unlawful and requesting the court to limit defendants to the issuance of citations for any violations on plaintiffs' part.

All defendants answered denying the allegations of the petition. Additionally the defendant City of Chicago counterclaimed seeking a permanent injunction restraining plaintiffs from selling from the public way at or about 1000 West Randolph Street. In answer to the counterclaim plaintiffs admitted selling, but denied packing, unpacking, storing or soliciting on the public way.

During the hearing the parties stipulated that all evidence may be considered in deciding plaintiffs' original complaint and defendants' counterclaim, regardless of which claim it was originally introduced to prove. At the close of the evidence plaintiffs' request for a permanent injunction was denied and the City of Chicago's request for a permanent injunction was granted.

OPINION

We consider first plaintiffs' contention that the court erroneously granted the City of Chicago's request for an injunction. That injunction permanently enjoins defendants "from packing, unpacking, storing, soliciting, and selling on any public way in the City of Chicago" except the Maxwell Street area.

■■ Plaintiffs first argue that although they admittedly "unload"

produce onto the street and "sell" it, they insist their actions do not constitute "packing", "unpacking", and "soliciting" as prohibited by the injunction and the ordinances upon which the injunction is based. Chicago Municipal Code, ch. 36, §36—43; ch. 36, §36—49.

We will not disturb the findings of a court of equity unless they are clearly against the weight of the evidence. (*Chirikos v. Akathiotis*, 9 Ill. App. 3d 191, 292 N.E.2d 120.) Here, plaintiffs' admission at trial that they placed their produce on the street, inviting all to buy, belies their contention that they did not "pack", "unpack", and "solicit." We hold plaintiffs' actions to be clearly within the definition of the city ordinance.

Next, in support of their contention plaintiffs cite a footnote to section 160—13 (Chicago Municipal Code, ch. 160, §160—13) which provides that ordinances designating districts where marketing is forbidden will be on file with the city clerk. They claim no ordinances are on file which list prohibited market areas. This plainly ignores the recent amendment to section 35—1 (Chicago Municipal Code, ch. 35, §35—1, as amended July 23, 1975, ch. 35, §35—1), which provides that the Maxwell Street area "and no other" shall be the designated market of the city.

Finally, they argue that "An act for the protection of farmers, fruit growers, vinegrowers, and gardeners" (Ill. Rev. Stat. 1975, ch. 5, par. 91), grants them the right to sell their produce "in any place or market where such articles are usually sold."[3] We first note that the statute explicitly allows corporate authorities to impose regulations prohibiting the obstruction of their streets. Thus, the injunction insofar as it prohibits "packing", "unpacking", and "storing" is clearly valid. However, the statute does grant to farmers an "undisputed right to sell" their produce, which directly conflicts with Chicago's attempt to limit this right via sections 35—1 and 36—49.1[4] of the Municipal Code (Chicago Municipal Code, ch. 35, §35—1; ch. 36, §36—49.1) and this injunction. Because Chicago is a home-rule municipality (Ill. Const. 1970, art. VII, §6(a)), we must therefore decide whether the statute or the ordinance controls.

Section 6(a) of article VII of the Constitution of 1970 provides:

"(a) * * * Except as limited by this Section, a home rule unit may

[3] Chapter 5, section 91 of the Illinois Revised Statutes (1975) provides in part:
"That every farmer, fruit and vine grower, and gardener, shall have an undisputed right to sell the produce of his farm, orchard, vineyard and garden in any place or market where such articles are usually sold, and in any quantity he may think proper, without paying any state, county or city tax, or license, for doing so, any law, city or town ordinance to the contrary notwithstanding: Provided, that the corporate authorities of any such city, town or village may prohibit the obstruction of its streets, alleys and public places for any such purpose * * *." (Approved January 13, 1872.)
[4] Section 36—49.1 of the Chicago Municipal Code provides in part:
"* * * no person shall sell, offer or expose for sale, * * * any article whatsoever, except newpapers, on any public way or other public place within the districts heretofore or hereafter designated by the city council, * * *"

exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

Because foodstuffs, especially produce, are subject to spoilage and vermin, they present a serious health hazard unless closely supervised by local authorities. Likewise, use of streets and sidewalks in a crowded urban area such as Chicago must by necessity be highly regulated to avoid massive traffic tie-ups. Accordingly, we think it is clear that sections 35—1 and 36—49.1 (Chicago Municipal Code, ch. 35, §§35—1, 36—49.1) were enacted for the protection of public health and safety and are a valid exercise of home-rule power.

■■ The Supreme Court has held on no less than five occasions (*Stryker v. Village of Oak Park*, 62 Ill. 2d 523, 343 N.E.2d 919; *Paglini v. Police Board*, 61 Ill. 2d 233, 335 N.E.2d 480; *Peters v. City of Springfield*, 57 Ill. 2d 142, 311 N.E.2d 107; *People ex rel. Hanrahan v. Beck*, 54 Ill. 2d 561, 301 N.E.2d 281; *Kanellos v. County of Cook*, 53 Ill. 2d 161, 290 N.E.2d 240) that ordinances enacted by home rule units pursuant to section 6(a) (Ill. Const. 1970, art. VII, §6(a)) supersede conflicting statutes enacted prior to the effective date of the Constitution. We, therefore, hold that the City of Chicago had the power under section 6(a) (Ill. Const. 1970, art. VII, §6(a)) to limit plaintiffs' right to sell to the Maxwell Street area (Chicago Municipal Code, ch. 35, §35—1; ch. 36, §36—49.1) regardless of the conflicting statute.

Normally, a court of equity will not enjoin the commission of a crime. (*City of Chicago v. Larson*, 31 Ill. App. 2d 450, 176 N.E.2d 675.) However, where criminal prosecution is ineffective, equity may act. *People ex rel. Dyer v. Clark*, 268 Ill. 156, 108 N.E. 994; *City of Chicago v. Geraci*, 30 Ill. App. 3d 699, 332 N.E.2d 487.

In *Larson*, defendant refused to allow city inspectors to enter his building though he was required to do so by municipal ordinance. In affirming the decision of the trial court granting the injunctive reliefs sought, the court said:
"* * * Repeated fines might break his [defendant] resistance—but they might not. In the meantime, the danger could continue to the jeopardy of the public. Punishing him would be but incidental to the relief required. The public need not be helpless in such a situation. A municipality, operating within its legislatively bestowed police powers, should not be rendered impotent in its legitimate effort to enforce laws protecting the safety, health and welfare of the public." 31 Ill. App. 2d 450, 455, 176 N.E.2d 675, 678.

■■ In the instant case we are faced with a similar situation. Plaintiffs

persist in violating the law and numerous citations have had no effect in deterring their illegal conduct. The public need not stand helpless while their streets and sidewalks are blocked impeding the free flow of traffic to the detriment of motorists and pedestrians. Even if this particular impediment is small, condonation of plaintiffs' resistance stands as an open invitation to others to violate these same laws. As we noted earlier, we live in an urbanized and highly crowded environment. Without proper regulation of the public ways the city would shortly be reduced to chaos. We, therefore, affirm the injunctive order of the trial court.

Having decided the injunction issued against plaintiffs was proper, we need not review plaintiffs' second contention that the court improperly denied their request for an injunction restraining allegedly unlawful police enforcement procedures. Because plaintiffs are now permanently enjoined from selling produce on Randolph Street, they are no longer subject to possible police misconduct, and thus no longer in need of equitable protection.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.