KEVIN DEMPSEY, Counterplaintiff-Appellee, v. JAMES STERNIK, Counterdefendant-Appellant.

Third District   No. 3—85—0551

Opinion filed September 24, 1986.

572

Steven J. Teplinsky, of Berman, Fagel, Haber, Maragos & Abrams, of Chicago, for appellant.

Michael Martin, of Dunn, Leinenweber & Dunn, Ltd., of Joliet, for appellee.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This action was brought as a third-party complaint to recover damages for an alleged conspiracy to destroy counterplaintiff's business and for inducement of breach of contract. The initial action was instituted on October 18, 1983, when Mary Ann and William Hoagland filed a complaint against Gemco Cleaning Services, Inc. (Gemco), and Kevin Dempsey (Dempsey) to dissolve Gemco. Appellee Dempsey subsequently filed a third-party complaint against defendant-appellant James Sternik, which is the subject of review on appeal.

In August of 1982, Kevin Dempsey purchased a 50% interest in the Gemco cleaning business from William and Mary Ann Hoagland. Since the major asset of the business was goodwill, the agreement provided as security a two-year noncompetition clause.

Shortly after Gemco was reorganized with Dempsey as president and equal partner, business prospered. By comparison, in 1981 Gemco had a gross income of $139,556.76 and $64,891 for the first half of 1982, whereas receipts for fiscal year beginning August 1, 1982, to-

taled $204,220.90.

On October 17, 1983, James Sternik, as counsel for plaintiffs William and Mary Ann Hoagland, filed a two-count complaint against Gemco and Dempsey seeking dissolution of Gemco. In count I plaintiffs charged that, subsequent to the filing of the articles of incorporation, differences erupted between the parties over the parties' respective roles, compensations, control of the corporate activities, computation of profits, and other differences, causing total inability of the parties to enter into agreed bylaws. Further, that Dempsey failed to properly perform his duties as president causing injury to the goodwill of the corporation and the loss of residential cleaning accounts. In count II, plaintiffs charged that the contract between the parties was totally vague and unworkable without the voluntary cooperation of the parties and, therefore, could not create a working corporation within the State of Illinois.

On January 9, 1984, Sternik entered into an agreement with William R. Hoagland (Billy) regarding the reorganization of a business to be known as Roberts Cleaning Services (Roberts). Billy was the 19-year-old son of William and Mary Ann Hoagland. The agreement provided generally that Sternik was to provide $2,000 for start-up capital and to provide loans to Roberts from time to time to finance the business during the first seven weeks. Billy was to be the active manager of the business and from time to time consult with Sternik as to any matter which may materially affect the business. Billy's duties as manager were to be based upon duties of managers in similar existing businesses or one that has recently ceased doing business. The agreement also provided that Billy was to be a general partner and Sternik was to be a limited partner in the business.

Defendant Dempsey filed a counterclaim on January 27, 1984, alleging that the Hoaglands breached their fiduciary duty to Gemco and Dempsey by operating a competing cleaning services business. The counterclaim was amended to include defendant Sternik and alleged facts supporting the proposition that Sternik was involved with the Hoaglands in a conspiracy to solicit Gemco customers to do business with Roberts. The amended counterclaim also alleged that Sternik, by aiding the Hoaglands in organizing Roberts, induced William Hoagland to breach his contract with Dempsey, causing the financial demise of Gemco.

The case was set for trial on June 17, 1985. On June 15, 1985, Kevin Hermanik (Hermanik), counsel for Sternik, moved the court to continue the trial on the basis that Sternik, an attorney, was scheduled to appear in court as counsel in a criminal matter. The motion

was denied. On June 17, 1985, just prior to trial, Hermanik moved the court to withdraw as counsel for Sternik or, alternatively, to continue the trial. The basis of the motion was that counsel for Dempsey had previously agreed to a continuance, and based upon that agreement, Hermanik was inadequately prepared to represent the interests of Sternik. Sternik additionally supplied an affidavit in support of the motion which indicated that William and Mary Ann Hoagland were out of State and unavailable for trial on June 17, 1985. This motion was also denied.

Shortly after the commencement of the bench trial, a settlement was reached between Dempsey, Mary Ann Hoagland, William Hoagland and Gemco whereby the Hoaglands paid Dempsey $14,500. The trial then proceeded with Dempsey's action against Sternik.

The circuit court of Will County entered a judgment order on July 8, 1985, against Sternik in the amount of $49,000 as actual damages and in the sum of $5,000 as punitive damages. Specifically, the court found that Sternik had conspired with the Hoaglands to put Gemco out of business. Further, that Roberts Cleaning Service, the partnership between Sternik and Billy, was nothing more than the alter ego of William and Mary Ann Hoagland. Additionally, the court found that Sternik induced a breach of contract by assisting the Hoaglands while aware of the contract and pending lawsuit between the Hoaglands and Dempsey.

The appeal presents three grounds for reversal. First, that the trial court's findings that appellant conspired to put Dempsey out of business and induced a breach of contract between the Hoaglands and Dempsey were against the manifest weight of the evidence. Second, that the damages set by the trial court were without basis and unsupported in the record. Third, appellant argues that he was so ineffectively represented by counsel that he was deprived of fundamental rights of due process.

■ As to appellant Sternik's first argument, there is adequate evidence in the record to support the trial court's finding of conspiracy between the Hoaglands and Sternik. A conspiracy is an agreement or combination of two or more people to do an unlawful act or to do a lawful act by unlawful means. Once established, the acts of one co-conspirator are admissible against all conspirators whose involvement has been proved. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299.) The evidence shows that Sternik was more than an unsuspecting limited partner in Roberts Cleaning Service. Paragraph 5(a) of the agreement between Billy and Sternik states that Sternik "shall have nei-

ther an obligation nor a right to perform any services for Roberts, compromise claims or other-wise handle the affairs of the business." The record clearly shows, however, that Sternik assumed certain managerial duties of Roberts. Most notably, Sternik was in charge of signing checks and obtaining insurance for the business. Both of these duties indicate that Sternik was aware of whom Roberts was doing business with and whom Roberts had in its employ. Sternik was not a limited partner but in fact an active participant in the daily operation of Roberts Cleaning Service.

Moreover, Sternik, as the former attorney for the Hoaglands, was aware of who were the former clients and employees of Gemco. Sternik, however, claims that although he was aware that he had former Gemco employees on his payroll and was obtaining insurance certificates on former Gemco clients, he was not a part of a conspiracy to run Gemco out of business. It is true, as Sternik asserts, that his actions would be entirely legal since he was not bound by the noncompetition clause of the Hoagland-Dempsey agreement. However, it is not the legality of Sternik's actions that are in question, but the underlying means by which these actions were carried out. The evidence shows that William and Mary Hoagland had been to Sternik's office and, according to Sternik's secretary, had delivered information concerning Roberts to Sternik. Further, William Hoagland informed Sternik that Roberts was using Gemco supplies and equipment, to which Sternik replied by saying "he didn't want to hear about it."

Sternik's attorney admitted at trial that the Hoaglands had devised a "scheme" to get rid of Dempsey and that in doing so had breached their fiduciary duty with Gemco. Sternik, however, maintains that he had no part in this "scheme." Moreover, that once Sternik found out that Roberts was doing business with former Gemco clients, he shortly thereafter terminated his relationship with Roberts. The record reveals, however, that Sternik was aware that Roberts was doing business with a former substantial client of Gemco on January 18 or 19, yet he did not terminate his relationship with Roberts until sometime after April 1. In the meantime, he was continually writing payroll checks for more and more former Gemco employees and obtaining insurance for more and more former Gemco clients.

■■■ Here, the appellee, Dempsey, had the burden of establishing by clear and convincing evidence Sternik's participation in a conspiracy to ruin Gemco. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 830, 413 N.E.2d 1299, 1309; *Illinois Rockford Corp. v. Kulp* (1967), 88 Ill. App. 2d 458, 232 N.E.2d 190, *rev'd on other grounds* (1968), 41 Ill. 2d 215,

242 N.E.2d 228.) Such proof can be circumstantial. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 830, 413 N.E.2d 1299, 1309.) If the circumstances relied upon are as consistent with innocent conduct as with guilt, the court's duty is to find that the conspiracy has not been proved. (*Bimba Manufacturing Co. v. Starz Cylinder Co.* (1969), 119 Ill. App. 2d 251, 256 N.E.2d 357.) The weight of the evidence in this case, however, is for the trier of fact to evaluate and the finding must be sustained unless wholly unsupported by the evidence. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 830, 413 N.E.2d 1299, 1309; *Witvoet v. Quinlan* (1976), 41 Ill. App. 3d 724, 354 N.E.2d 524.) The trial court's decision clearly finds support in the record and is not against the manifest weight of the evidence.

Defendant argues that evidence furnished by an adverse witness is binding unless impeached or rebutted (*Bimba Manufacturing Co. v. Starz Cylinder Co.* (1969), 119 Ill. App. 2d 251, 268, 256 N.E.2d 357), and that no testimony was offered by any other witness which rebuts Sternik's testimony of strenuously advising the Hoaglands against taking steps in violation of the noncompetition clause with Dempsey. But Sternik's advice to the Hoaglands concerning their fiduciary duty to Gemco is inconsistent with Sternik's knowledge and participation in the events that were taking place at the time. Assuming *arguendo* that Sternik advised the Hoaglands not to solicit Gemco clients for Roberts, he nevertheless was aware that the Hoaglands were doing so and accepted checks and obtained insurance for these clients. In short, Sternik's own actions rebutted his testimony.

Dempsey also alleged in count IV of his amended counterclaim that Sternik induced William Hoagland to breach his contract with Dempsey and that as a proximate result of Sternik's inducement, Gemco has ceased operation, is in liquidation and has caused Dempsey to lose substantial profits and salaries. Sternik asserts that the trial court's ruling in favor of Dempsey was against the manifest weight of the evidence produced at trial. We disagree.

■ The Illinois Supreme Court had adopted the Restatement (Second) of Torts, section 766 definition of third-party inducement of breach of contract. It is defined as follows: " '[O]ne who, without privilege to do so, induces or otherwise purposely causes a third person to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.' " (*Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 473, 244 N.E.2d 809, 812; *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 241, 371 N.E.2d 888, 892; *Bergfeld v. Stork* (1972), 7

Ill. App. 3d 486, 490, 288 N.E.2d 15, 17; *Blivas & Page, Inc. v. Klein* (1972), 5 Ill. App. 3d 280, 285, 282 N.E.2d 210, 214.) Where the third party influences a contracting party to breach the contract, the innocent contracting party has a cause of action against both the other contracting party and a tort action against the third party. *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 241, 371 N.E.2d 888, 892; *cf. Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.

■ There is ample proof in the record supporting the trial court's decision that Sternik formed Roberts for the purpose of siphoning off business of Gemco. As stated above, Sternik purposely invested personal assets into Roberts Cleaning Service and entered into a partnership with Billy, the 19-year-old son of William and Mary Ann Hoagland. He purposely arranged for insurance certificates to be issued by Laadt & Company on February 9, 1984, in order to continue to do business with former Gemco customers. He also purposely handled various financial affairs, including accepting checks from former Gemco clients, and issuing payroll checks to Roberts employees that he knew were former Gemco employees.

■ Sternik argues that he cannot be found to have induced William Hoagland to break his contract with Dempsey because all of his activities were legal and not subject to any noncompetition clause. Sternik supports this by arguing that the record is void of any showing that Billy was the alter ego of William and Mary Ann Hoagland. Again, the trial court found that Billy was the alter ego of William and Mary Ann. This factual determination cannot be overturned unless against the manifest weight of the evidence. (*Witvoet v. Quinlan* (1976), 41 Ill. App. 3d 724, 354 N.E.2d 524; *Willet Motor Coach Co. v. Board of Education* (1981), 103 Ill. App. 3d 760, 431 N.E.2d 1190, *cert. denied* (1982), 459 U.S. 944, 74 L. Ed. 2d 202, 103 S. Ct. 258.) The record shows that it was common practice for William and Mary Ann to deliver information regarding Roberts to Sternik; that William told Sternik that Roberts had been using Gemco supplies and equipment; that William and Mary Ann contacted Gemco's customers and introduced Billy to them; and that Sternik's secretary had typed a letter for William and Mary Ann addressed to a customer of Gemco. Even if the reviewing court disagreed with a trial court factual determination, or may have come to a different conclusion, the decision of the trial court will not be overturned if evidence supports the decision. *La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 436 N.E.2d 645.

Sternik's second theory for reversal is that the trial court's award

of damages was excessive and unsupported in the record. We disagree and affirm the decision of the trial court.

Sternik argues that plaintiff's expert valued businesses such as Gemco or Roberts at three times net profit. Therefore, the net profit of Gemco during 1983 was only $15,927.98, of which plaintiff would be entitled to one-half of three times that figure. Plaintiff and defendant dispute as to whether salaries retained by the Hoaglands and Dempsey for the year should be included in the net-profit computation.

■■ Plaintiff's expert testified that a service business would sell for three times net earnings, not net profits. For purposes here, however, the terms "net profits" and "net earnings" are interchangeable. Net profits are determined by computing the difference between gross profits and the expenses that would be incurred in acquiring such profits. (*Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868.) Further, net earnings means a balance after a deduction. What the deduction shall include is determined from the occasion for the use of the words or from the context. *Winkelman v. General Motors Corp.* (D.C.N.Y.), 44 F. Supp. 960, 1000.

We are of the opinion that "net profits" includes those profits paid out as salaries to the officers of a small corporation such as Gemco. To determine otherwise would allow such corporations to always show a very small profit and thus avoid corporate tax, but allow the corporate officers, who are also the sole stockholders, to receive healthy incomes. The result may be different in large corporations with multimillion dollar earnings.

■■ Therefore, when the salaries drawn out by the Hoaglands and Dempsey are added back to the 1983 net-profits computation of Gemco, the "net profit" or "net earnings" is shown as $65,327.98. Hence, based on the uncontroverted testimony by plaintiff's expert as to valuing service-type corporations, the trial court was justified in awarding plaintiff $49,000 as assessed damages.

■■ Sternik further claims that the trial court abused its discretion in failing to continue the trial and in failing to permit counsel for Sternik to withdraw from the case. We disagree and affirm the trial court's decision. The denial or granting of a motion to continue lies within the sound discretion of the trial court and will not be overturned unless that discretion has been abused. (*Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 474 N.E.2d 456; *Parker v. Newman* (1973), 10 Ill. App. 3d 1019, 295 N.E.2d 503.) A critical factor in review of grant or denial of a motion for continuance is whether the party seeking the continuance acted with diligence in proceeding with the cause. (*Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 474

N.E.2d 456.) It is also true, however, that a judge should not refuse a motion for continuance when the ends of justice require it. *Curtin v. Ogborn* (1979), 75 Ill. App. 3d 549, 394 N.E.2d 593.

The record reveals that defendant's attorney had not used due diligence in preparing for trial. Although there was some indication of an agreement between counsel to continue the case, the only stated reason was that Mr. Sternik had a trial obligation in another court. Dempsey's attorney, however, prior to agreeing to the continuance, said the parties should wait and see if Mr. Sternik was, in fact, going to be in trial. Accordingly, the trial court checked to see if Sternik was to appear in court prior to ruling on the motion for a continuance. Regardless, Sternik's assertions of Hermanik's total unpreparedness indicate a lack of due diligence which is not a good or just cause for granting a continuance.

Appellant finally argues that his trial counsel was so ineffective that he was deprived of fundamental rights of due process. In support of this theory, appellant cites examples where his attorney failed to object to certain testimony that was either subject to the attorney-client privilege or was inadmissible hearsay. Generally, failure to object at the trial level constitutes a waiver of the right to raise the issue on appeal. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.) An objection cannot be made, however, to preserve an issue for an appeal if the claimed error was so serious as to constitute a fundamental error. *Maybell v. Mayor's License Com.* (1981), 95 Ill. App. 3d 653, 420 N.E.2d 571.

Appellant fails to list any case that elevates any claimed failure of objection to that of a fundamental error. Hearsay is not a fundamental error. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) By not raising at trial the claim that certain testimony was inadmissible hearsay, the objection is waived. (*Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793.) Likewise, failure to object to the introduction of evidence because subject to the attorney-client privilege also waives the issue on appeal. *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.

Appellant concedes that no appellate court in this State has ever been presented with an ineffective-assistance-of-counsel argument in a civil matter, but insists that the facts of this case require us to deviate from the norm. We are not persuaded that the facts warrant such a deviation. Appellant, an experienced attorney, had ample opportunity to evaluate the effectiveness of his counsel. He was allowed the attorney of his choice and, hence, cannot now depend on the court to correct his improvident choice.

Finally, Supreme Court Rule 366 (87 Ill. 2d R. 366), which is analogous to the plain-error doctrine in criminal cases, will not be invoked as this court is not persuaded that injustice will result from the trial court's decision.

The decision of the trial court is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.