THE CITY OF CHICAGO HEIGHTS, Plaintiff-Appellee, *v.* EMERY C. FURRER *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-1572

Opinion filed August 17, 1981.

Karr, Moran, Felbinger & Valenti, Ltd., of Chicago (Thomas P. Valenti and Neal B. Goodfriend, of counsel), for appellant Emery C. Furrer.

Creswell, McLaughlin, Fares & Associates, of Chicago Heights (David J. Fares, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This action was brought on January 10, 1978, by the City of Chicago Heights (plaintiff) to demolish the White Hotel (Hotel), a building owned by Emery Furrer (defendant). An *ex parte* judgment for demolition was entered on April 28, 1978. On May 19, 1978, defendant moved to vacate the judgment. (Ill. Rev. Stat. 1977, ch. 110, par. 50(5).) This motion was denied by the trial court on May 1, 1980, almost 2 years later. The court then ordered that the judgment for demolition be put into full force and effect. Defendant appeals.

The plaintiff's complaint listed seven categories of housing code violations:

"a. Broken, loose or missing plaster.

b. Cluttered with debris, old washer tank, and softener.

c. Water closet inoperable.

d. Tubs stained.

e. All rooms need repair and painting of walls and ceilings.

f. Broken window panes.

g. Electrical violations."

The verified complaint further alleged the housing code enforcement officer of plaintiff, Joseph Ignelzi, had determined the Hotel to be "dangerous and unsafe or uncompleted and abandoned." The judgment for demolition found plaintiff had fully sustained the allegation that the Hotel is "dangerous and in an unsafe condition." Neither party has been able to produce a report of these proceedings prior to entry of judgment.

Defendant's motion to vacate the judgment for demolition alleged the code violations complained of were repairable and stated defendant and his counsel had "exercised reasonable diligence.." A hearing on this motion was set for May 26, 1978. Defendant failed to appear on that day and his motion was stricken. The trial court reinstated defendant's motion and continued the hearing to June 2, 1978.

On June 2, 1978, the judgment for demolition was stayed and the motion to vacate continued until July 28, 1978. Defendant was ordered to secure the building and present evidence of his financial ability to complete the necessary repairs by July 28.

Thereafter there were approximately 11 additional hearings from time to time on various subjects such as repairing the Hotel and cost thereof, possibility of loans for repair purposes and efforts by defendant to sell the property. Defendant failed to comply with any of various orders entered by the trial court concerning these matters.

On November 16, 1979, the trial court conducted a hearing as to whether defendant was going to rehabilitate the Hotel and whether the court should further stay the judgment for demolition. Defendant testified he obtained building permits from plaintiff. He stated an unnamed plumbing subcontractor had done some plumbing repairs on the Hotel but that a "stop work order" had been posted at the Hotel by plaintiff. Defendant could not recall the name of the general contractor nor could he recall if an architect's drawings had been required. Defendant could not recall that he had been required by the court to provide proof of his financial ability to repair the Hotel. Defendant further stated all tenants had finally been evicted from the Hotel.

Joseph Ignelzi, the housing code enforcement officer of plaintiff, testified a work permit was issued for the Hotel on April 23, 1979. On subsequent inspections it was noted no repair work had been done during the next two months. By August 24, 1979, only two percent of the necessary plumbing work had been performed. These inspections also revealed that tenants had not been evacuated. The "stop work order" was posted in August 1979, due to the failure to rehabilitate and the presence of tenants in violation of the orders of the trial court. Ignelzi testified he had mailed letters to the existing tenants ordering them to vacate the Hotel in compliance with the court order of January 11, 1979. Police were sent to enforce the order, but evicted tenants re-entered the Hotel after the police had left.

Ignelzi further testified that interior inspections were made three times in September and October 1979. On September 20, 1979, Ignelzi personally inspected the Hotel after some mattress fires had burned inside. In his inspection of October 19, 1979, he noted no repair work was being done and eight rooms were being occupied by tenants. The last time he personally inspected the Hotel interior was October 24, 1979, when he noted the building to be open but abandoned. An outdoor visual inspection by one of Ignelzi's subordinates on November 15, 1979, found the building boarded up and secured. Ignelzi could not state whether the building had been repaired as of that date, but noted that no contractor had contacted plaintiff about a required inspection.

John Halfaker, an architect retained by defendant, testified he inspected the Hotel on November 15, 1979. In his opinion, the Hotel was not unsafe nor was it in a state of disrepair so as to be dangerous to the public. Halfaker admitted the building was not habitable and would require approximately $50,000 in repairs to bring it within minimum compliance with the building codes. He estimated the total value of the building to be between $100,000 and $150,000. The only repairs Halfaker had seen were some "spot plastering" on the first floor.

On the basis of this testimony, the trial court found defendant had failed to initiate any rehabilitative repairs on the Hotel. The stay of execution on the judgment for demolition was vacated and the judgment was put into full force and effect. The cause was continued to February 15, 1980, for status.

On December 14, 1979, defendant filed another motion to vacate the judgment for demolition. On January 9, 1980, the trial court again issued a stay of the execution of the judgment for demolition. Defendant was ordered to deposit $35,000 with the clerk of the circuit court by January 16, 1980. Defendant complied, and on January 16 the trial court ordered the money to be used to make the repairs outlined in the complaint for demolition. Defendant was to be permitted to request distribution of the funds to pay the contractors.

On January 31, 1980, the parties requested the court to set up conditions with respect to the proceedings. The trial court ordered defendant to:

1. Obtain the necessary building permits to rehabilitate the property.

2. Keep the premises vacant except for a resident security guard.

3. Obtain occupancy permits prior to leasing any apartments on the subject property.

4. Complete all rehabilitative work to conform with the building code of plaintiff by May 1, 1980.

On May 1, 1980, the trial court was advised no building permits had been obtained by defendant and no violations had been corrected. No contrary evidence was presented by defendant, who continued to argue he was never granted a hearing on the *ex parte* demolition judgment. The trial court concluded defendant had been given ample time to repair the Hotel and had failed to do so. The court vacated the stay of execution of the demolition judgment and allowed a lien to attach to the premises for the cost of demolition. All money on deposit was ordered returned to defendant.

Defendant filed notice of appeal on May 28, 1980. On June 2, 1980, the trial court stayed the judgment for demolition pending appeal on condition the Hotel should remain vacant.

In this court, defendant contends the trial court erred in continually refusing to vacate the *ex parte* judgment for demolition entered under section 11—31—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—31—1). Defendant argues the refusal of the trial court to hear the merits of the case was a denial of substantial justice and a violation of his right to due process of law.

Defendant's motion to vacate is governed by section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 50(5)):

> "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable."

The Illinois Supreme Court clearly enunciated the governing standard for this section in *People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841:

> "The overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits."

In determining the question of substantial justice, the court should consider the existence of a meritorious defense and due diligence on the part of the moving party. (See *Plantaric v. Michaels* (1981), 98 Ill. App. 3d 154, 157, 424 N.E.2d 64.) Additional considerations were set forth by this court in *Dalton v. Blanford* (1978), 67 Ill. App. 3d 91, 100, 383 N.E.2d 806:

> "Other opinions have expressly stated that courts should be more liberal in setting aside a default judgment when the motion is filed within 30 days of the judgment. [Citations.] Additional factors are the residence of plaintiff in Illinois (*Prenzler v. Prenzler*, 55 Ill. App. 3d 244, 370 N.E.2d 642), the severity of the penalty as a result of the default judgment [citation], and the attendant hardship on the plaintiff to proceed to a trial on the merits [citations]. Usually '[a]ny imposition that a trial may be on the plaintiff is outweighted by the respected maxim that a litigant is entitled to his day in court.' *Karaskiewicz v. Karaskiewicz*, 38 Ill. App. 3d 509, 512, 348 N.E.2d 184."

We also note the reversal of a default judgment does not require a determination that the trial court abused its discretion. See *Patrick v. Burgess-Norton Manufacturing Co.* (1976), 63 Ill. 2d 524, 531, 349 N.E.2d 52.

Defendant contends the trial court was never presented with sufficient evidence that the Hotel presents a danger to public health and safety. Defendant also argues that although only minimal repairs were

completed during the long pendency of these proceedings, evidence properly established the Hotel is in fact repairable. Such factors, urges defendant, establish a meritorious defense against a judgment for demolition and thus support his claim that the refusal of a trial on this issue was a denial of substantial justice.

We are compelled to agree. In *City of Aurora v. Meyer* (1967), 38 Ill. 2d 131, 136-37, 230 N.E.2d 200, the supreme court stated:

"The law is well settled that in cases of this nature courts do not go further than is necessary to protect the public interest. Property may be ordered destroyed under certain conditions but only if the danger cannot be abated in any other way. It is only in cases where an absolute necessity exists that courts adopt the drastic method of correction by ordering destruction of the property. [Citations.] In other words the remedy is limited to the necessities of the case. Where hazardous conditions may be remedied by repair without major reconstruction the building may not be destroyed."

■■ "There is a strict policy in Illinois not to order demolition of buildings unless the structure is substantially beyond repair, and courts granting demolition decrees are required to specify the defects which render the building dangerous and unsafe." (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 95-96, 315 N.E.2d 215.) The judgment for demolition in the instant case does not in fact specify the conditions which render the Hotel dangerous and unsafe. The judgment merely concludes plaintiff "sustained the material allegations of the complaint and that the building * * * is dangerous and in an unsafe condition."

In addition, plaintiff's complaint for demolition simply details seven areas of building code violations, as set forth above. Without further allegation, the complaint then concludes the building is unsafe and dangerous.

We do not find these seven categories of codal violations, standing alone, establish a threat to public safety. Furthermore, we have no record of the *ex parte* hearing before the trial court on plaintiff's complaint. Therefore we are unable to determine how the trial court concluded the building to be unsafe and dangerous solely on the basis of these allegations. See *City of Chicago v. Leakas* (1972), 6 Ill. App. 3d 20, 28, 284 N.E.2d 449.

We further note that testimony presented at the evidentiary hearing on November 16, 1979, by architect John Halfaker indicated the Hotel was in fact repairable. We are aware the purpose of that hearing was to determine whether or not defendant had in fact made repairs. Although it is clear he had not done so, such testimony established, at the very least, a controversy over the repairability of the Hotel. Therefore, we must

conclude defendant has indeed established the possible existence of a meritorious defense sufficient to warrant a trial on the merits of the cause. ██ We find defendant has also sufficiently satisfied the additional factors to be considered under *Dalton* (67 Ill. App. 3d 91, 100). Defendant's motion to set aside the *ex parte* hearing was filed in a timely manner pursuant to section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 50(5)). Second, the residence requirement of *Dalton* is satisfied by the fact the plaintiff is an Illinois municipal corporation. Finally, we believe the destruction of a building valued in 1979 between $100,000 and $150,000 would be a far greater hardship on defendant than any burden on plaintiff in proceeding with a trial on the merits. Without a hearing and a proper decision on the merits, we cannot conclude that rehabilitation of the Hotel with a resulting social and economic benefit is impossible.

Plaintiff strongly contends defendant's refusal to repair the Hotel during the 26 months of pending litigation demonstrates that a trial on the issue of repairability would have been futile. This court is indeed mindful of the long delay and of the frustrations suffered by both plaintiff and the trial court. We cannot compliment defendant for his patent lack of cooperation and his dilatory failures to comply with orders entered by the patient trial judge.

However, it remains significant that these lengthy proceedings were conducted only on the question of defendant's efforts to repair the Hotel. Defendant never had an opportunity to refute the necessity of demolition of the Hotel. Indeed, in all fairness, the pending judgment for demolition may well have frustrated any efforts by defendant to secure proper financing or a purchaser for the Hotel. In our opinion, both parties would have been better served had the *ex parte* judgment been vacated and there had been a trial on the merits.

We therefore direct that a prompt hearing be conducted by the trial court on the issue of the merits of entry of a judgment for demolition of the Hotel.

For these reasons, the judgment appealed from is reversed and the cause is remanded for further proceedings as directed.

Judgment reversed and cause remanded.

CAMPBELL, P. J., and O'CONNOR, J., concur.