THE VILLAGE OF MAYWOOD, Plaintiff-Appellee, v. REGINAL BAR-
RETT *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—89—1388

Opinion filed March 25, 1991.

Georgette Nabhani, of Chicago, for appellants.

Stanley L. Hill & Associates, P.C., of Chicago (Lawrence E. Sommers, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:
Defendants, Reginal and Rose Ann Barrett,[1] appeal from orders entered by the trial court authorizing plaintiff, Village of Maywood

---

[1]Initially, Reginal Barrett was the sole defendant.

(the Village), to demolish an unoccupied, single-family dwelling owned by defendants, located at 1236 S. 18th Avenue, Maywood (the Premises). The sole issue raised on appeal is whether the trial court abused its discretion in denying defendants' oral motion for a continuance of the demolition proceedings. For the following reasons, the judgment of the circuit court is affirmed.

The record sets forth the following events leading up to the order to demolish the Premises. On March 10, 1988, pursuant to section 11—31—1 of the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1987, ch. 24, par. 11—31—1), the Board of Trustees of the Village passed an ordinance which provided that as the result of certain violations of the Maywood Village Code, enumerated in the ordinance, the Premises was found to be "dangerous and unsafe" and a "hazard to the health and safety of the residents of the Village of Maywood." Accordingly, on April 15, 1988, the Village mailed a 15-day violation notice to Reginal, as owner of record, demanding that he either repair or demolish the Premises within 15 days. The notice further stated that if he failed or refused to repair or to demolish the Premises within that time, the Village was authorized to file a petition in the circuit court of Cook County, seeking a court order for the Village to repair or to demolish the Premises, with the costs for doing so becoming a lien on the property.

When Reginal failed to repair or to demolish the Premises within the 15-day period, on June 3, 1988, the Village filed a "petition to demolish or repair unsafe building" in the circuit court of Cook County. In the petition, the Village sought an injunctive order requiring Reginal to repair or to reconstruct the dangerous and unsafe Premises. In the alternative, the Village sought an order authorizing and directing the Village to demolish and to wreck the Premises, and to assess a fine against Reginal in the amount of $500 per day for each day he failed to repair or to reconstruct the dangerous and unsafe Premises.[2]

In his response to the Village's petition, dated June 29, 1988, Reginal claimed, *inter alia*, that the Premises was boarded up and unoccupied; that no conditions required emergency action; that he had put on a new roof and had installed new drywall on interior surfaces; that he had never received the September 18, 1987, violation notice; that the 15-day time frame was arbitrary and unreasonable; that enforce-

---

[2]The record also contains a Village of Maywood violation notice, dated March 11, 1981, and a Village of Maywood violation notice, dated September 18, 1987, regarding the Premises, addressed to Reginald Barrett, 1607 S. 10th Ave., Maywood, IL 60153. Each notice requested that the specifically enumerated zoning violations be corrected within 30 days.

ment of the Maywood Village Code was arbitrary and inconsistent; and that the Premises would be repaired that summer. Reginal then requested that he be given sufficient time to make the improvements and that he be allowed to proceed on an agreed schedule without being assessed any fines.

Thereafter, on July 19, 1988, the trial court entered an order dismissing the cause for want of prosecution. That order was vacated and the cause was reinstated on September 27, 1988, with a status hearing set for October 26, 1988, to consider a repair schedule. Reginal failed to appear at the October 26 hearing, and the court found that Reginal had also failed to provide the Village with a repair schedule per his representation to the Village at the September status hearing. The cause was set for another status hearing on November 2, 1988.

At the November 2 status hearing, Reginal appeared *pro se*. At that time, the trial court granted the Village leave to add Melrose Park National Bank, land trust No. 5187; Melrose Park Savings and Continental Illinois National Bank and Trust as necessary parties. The cause was then set for a status hearing on December 14, 1988. In the interim, on November 9, 1988, the Village added Rose Ann Barrett, Reginal's wife, as a defendant.

Following the hearing on December 14, 1988, the trial court entered an order, directing defendants to correct certain of the enumerated violations within 30 days and to correct others within 60 days. If the violations were not corrected so as to comply with the Maywood Village Code within the time periods specified, the Village would be granted its motion for a hearing and defendants would be fined $500 per day per violation. The cause was then set for a status hearing on January 18, 1989, at which time compliance was to be evaluated. The order further stated that no further extensions were to be granted for defendants' compliance.

On January 18, 1989, the trial court entered an order setting February 28, 1989, as the next hearing date and ordered defendants to permit the Village to gain entry to the Premises to make inspections within seven days of the hearing. On February 28, an order was entered granting defendants' motion to substitute judges. The cause was then continued to March 22, 1989. On March 22, on the court's own motion, the cause was continued to March 29, 1989.

At the March 29, 1989, hearing, defendants[3] requested another

---

[3]Reginal appeared on behalf of himself and Rose Ann.

continuance on the grounds that: (1) the attorney who had been helping Reginal prepare his defense had died three weeks ago; (2) defendants would be closing on the sale of another of their buildings within 10 to 15 days which would net them $70,000, giving them enough money to either make the necessary repairs to the Premises or to hire an attorney; (3) the Village had backed out on an agreement regarding the repairs; and (4) they would be receiving $15,000 from the Internal Revenue Service in four weeks which they were willing to put in escrow for the repairs.

The trial court then recessed the trial for a short pretrial conference to further enable defendants and the Village to reach some type of agreement. Following the conference, the Village informed the trial court that it intended to proceed with the hearing because defendants' source of funding was "nebulous" and it could not come to a firm agreement with defendants. The Village further indicated that if the demolition order issued, the Village would be inclined to stay the order if defendants complied within 30 days. Further, if defendants could come up with the proper funding to put the Premises in compliance with the Maywood Village Code, the Village would vacate the order within the 45-day period. Defendants replied that they had asked the Village for an extension to April 30 and had offered to put up a $50,000 performance bond by April 15. However, the Village would not agree.

The court then denied defendants' request for a continuance and recessed the proceedings for lunch. In reaching its decision, the trial court noted that defendants had indicated that they were short of funds to hire an attorney. However, the trial court found that it was not dealing with normal indigence, just a "shortness of funds." Further, it found that there had been a substantial amount of time from the filing in April 1988 to the present within which defendants could have hired an attorney.

Following lunch recess, defendants did not return to the courtroom. The court informed those present that during the lunch recess, Reginal had given the court clerk a document to be given to the court. The clerk then stated for the record that during recess, Reginal had approached his desk with two written orders and requested that the clerk deliver one to the court. When the clerk told Reginal that it would be better if he delivered them to the court personally, Reginal said, "There's no need of me going there." As a result, the clerk took the orders and gave them to the trial court.

The trial court then indicated that the order it had received from Reginal was entitled "A Notice to Stay," issued by the Bankruptcy

Court, dated March 28, 1989. The debtor was "Diversified New Dimensions, Inc." and the stay was signed by Reginal Barrett, as president of the debtor company. The Village indicated that pursuant to its records and its title search of the Premises, Diversified New Dimensions had no interest in the Premises. After reviewing its records, the trial court found that the notice of stay had no bearing on this case. The trial court then noted defendants' continued absence from the proceedings, found their absence to be voluntary, and allowed the Village to proceed *ex parte.*

The Village then presented its case in chief. Lawyer Smith and Manual Cathright, neighbors to the Premises, testified that the Premises was detrimental to neighborhood property values. Smith further testified that the Premises had been in this condition for 10 to 12 years, was vacant, and was accessible to vagrants.

Next, Motiryo Keambiroiro, Maywood village manager, testified as an expert witness in the field of architecture. Keambiroiro enumerated the structural deficiencies and stated that, in her opinion, the Premises was extensively damaged, was structurally unsound, was a hazard to the community, and would require approximately $50,000 to $60,000 in repairs to bring the Premises up to the Maywood Village Code standards.

Eric Stith, licensed real estate broker and appraiser, testified that, in his opinion, the fair market value of the home in its present condition was $15,000. By contrast, the fair market value of other homes in the area was $45,000 to $50,000. Further, even if totally reconstructed, it would not likely sell for more than $45,000.

Next, Kenneth Massa, director of code enforcement for the Village, testified that originally he had inspected the Premises on September 15, 1987, at which time a violation notice had been issued to Reginal. Massa stated that a violation notice also had been sent on March 11, 1981. At Massa's most recent inspection of the Premises on February 24, 1989, he found it in substantially the same condition as in 1987. Some repair attempts had been made, but none of them were up to the Maywood Village Code standards. In Massa's opinion, the Premises was over 80% damaged and it would cost approximately $50,000 to bring the Premises up to the Maywood Village Code standards.

Anthony Thomas, code enforcement officer for Maywood, testified that when he inspected the Premises in February 1989, he found it to be in a substandard and unsafe condition. Thomas adopted the testimony of Keambiroiro and Massa regarding the condition of the Premises.

Following the testimony, the trial court found that the Premises was unsafe and a menace to the health, safety and welfare of the residents. Accordingly, it found in favor of the Village regarding the issuance of an order of demolition. The court then continued the matter for 28 days so that if defendants were able to acquire some money, they could renovate the Premises. The trial court put the matter over for a status hearing in 28 days, at which time the court would either: (1) enter an order of demolition in accordance with its findings; or (2) if action had been taken by defendants, continue the matter to permit possible remodeling; and (3) determine any fines at that time. The trial court requested the Village to personally serve defendants a copy of the order.

Subsequently, on April 25, 1989, one day before the scheduled status hearing, defendants filed a premature notice of appeal from the March 29, 1989, order. Defendants failed to appear for the scheduled status hearing the following day. As a result, pursuant to the March 29, 1989, order, judgment was entered in favor of the Village and the Village was authorized to abate the nuisance by demolishing and wrecking the Premises. The order further provided that the Village was absolved from any liability caused by the wrecking; that the Village was granted the right to seek judgment against defendants to recover costs; that the trial court retained jurisdiction to enforce the order; and that the order was final and appealable.

The following day, the Premises was demolished by fire pursuant to the Village's instructions. Thereafter, on May 1, 1989, defendants filed an amended notice of appeal from the March 29, 1989, and April 26, 1989, orders.[4]

Although defendants state that the sole issue on appeal is whether the trial court abused its discretion in denying their oral motion for a continuance made at the March 29, 1989, hearing, in arguing that issue, defendants have incorporated the contention that they were not given a reasonable opportunity to repair the Premises before the order of demolition issued as well as various contentions as to errors in the pleadings and in the proceedings below.

■ Regarding defendants' request for a continuance, section 2—1007 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1007) provides:

---

[4]This court observes that the orders from which defendants appeal do not refer to Rose Ann Barrett in the captions. Yet, she did file an amended notice of appeal. No issue has been raised as to this apparent discrepancy. Therefore, it is not before this court.

"[I]n actions involving building code violations or violations of municipal ordinances caused by the failure of a building or structure to conform to the minimum standards of health and safety, the court shall grant a continuance only upon a written motion by the party seeking the continuance specifying the reason why such continuance should be granted."

The well-established purpose of section 2—1007 is to give the municipality a quick and effective means of removing unused and dilapidated structures that present danger and blight. (*City of Chicago v. James E. Mulligan Enterprises, Inc.* (1960), 27 Ill. App. 2d 481, 170 N.E.2d 13.) Pursuant to the "Supplement to Historical and Practice Notes" following section 2—1007 (Ill. Ann. Stat., ch. 110, par. 2—1007, Supplement to Historical & Practice Notes, at 43 (Smith-Hurd Supp. 1990)), that portion of section 2—1007 set forth above was added in response to the "well-publicized instances of endless delays in the prosecution of actions relating to structural defects, which mitigated the consequences to building owners of disregarding the condition of their properties and imperiled the lives of occupants and others *** [and] was enacted in order to underscore the importance of finding good cause for a continuance, which was already required by the section."

■ In the present case, on the date of the scheduled hearing, defendants orally requested a continuance predicated on the grounds that the attorney who had been helping Reginal prepare for his court appearances had died three weeks earlier and that defendants would be receiving approximately $70,000 in 10 or 15 days from the sale of another property with which they could either make repairs or hire another attorney. In addition, defendants claimed that they would be receiving $15,000 from the Internal Revenue Service in approximately four weeks. However, defendants never presented a written motion requesting a continuance. Pursuant to section 2—1007, a written motion is a condition precedent to the trial court's granting a continuance in actions involving building code violations. Thus, without a written motion, the trial court could not have abused its discretion in denying a continuance because it is not within the trial court's discretion to grant a continuance without a written motion.

■ However, even if defendants had filed a written motion for a continuance pursuant to section 2—1007, the trial court would not have abused its discretion in denying defendants' motion for a continuance. There is no absolute right to a continuance. Generally, the decision to grant or to deny such a motion lies within the sound discretion of the trial court (*Grimming v. Alton & Southern Ry. Co.* (1990), 204 Ill. App. 3d 961, 562 N.E.2d 1086) and will not be disturbed absent a

manifest abuse of such discretion or unless a palpable injustice appears in the record on appeal. (*Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 505 N.E.2d 1213.) An important factor in determining whether the trial court has abused its discretion in denying a motion for continuance is whether the movant has shown diligence in proceeding with the cause. (*Lipke v. Celotex Corp.*, 153 Ill. App. 3d 498, 505 N.E.2d 1213.) Further, once a case has reached the hearing stage, no motion for continuance is to be heard without sufficient excuse being shown for delay in so moving, and without grave reasons being presented to support the request. *Mireles v. Indiana Harbor Belt R.R. Corp.* (1987), 154 Ill. App. 3d 547, 507 N.E.2d 129.

■ In the present case, defendants have not shown due diligence in following the orders of the court, have not given a sufficient excuse for waiting until the day of the hearing to request a continuance, and have not presented grave reasons to support their request. First, with respect to defendants' diligence, the record indicates that a violation notice was sent to Reginal on April 15, 1988, stating that the Premises had to be repaired within 15 days or the Village would file a petition to demolish or to repair. When no steps were taken to repair the Premises, the Village filed its petition. Reginal responded on June 29, 1988, stating, *inter alia*, that the Premises were unoccupied; that the windows on the Premises were boarded; that he had put on a new roof and had installed new drywall in the interior; and that the steps had been stolen from the Premises in fall 1987. The cause was dismissed for want of prosecution on July 19, 1988, then reinstated on September 27, 1988, and set for a status hearing on October 26, 1988, at which time the parties were to consider a repair schedule. Reginal failed to appear on October 26 and did not provide the Village with a repair schedule. The cause was then set for another status hearing on November 2, 1988. Defendant appeared *pro se*, and the Village added necessary parties. Status was then set for December 14, 1988. In the interim, on November 9, 1988, the Village added Rose Ann Barrett, Reginal's wife, as a defendant. On December 14, 1988, the trial court entered an order stating that defendants were to correct certain specifically enumerated violations of the Maywood Village Code within 30 days, and to correct others within 60 days. All repair work was to comply with the Maywood Village Code. The cause was set for a status hearing on January 18, 1989. The order further stated that no further extensions would be granted to defendants for compliance.

On January 18, 1989, defendants were ordered to permit the Village to gain entry to the Premises to make an inspection within seven days of the hearing, set for February 28, 1989. On that date, an order

was entered substituting judges and continuing the cause to March 22, 1989. On March 22, 1989, the hearing was continued to March 29, 1989, on the trial court's own motion.

On March 29, the day the hearing was to commence, defendants orally requested a continuance. Defendants claimed that Reginal had made the repairs which were supposed to have been made by January 24, but that he had then injured his back. Defendants further claimed that there was new drywall, a new roof, new sidewalk and 80% new siding. After the trial court denied the continuance, it recessed the proceedings for lunch. When defendants did not appear after recess, the trial court commenced the proceedings *ex parte*. At the hearing, Motiryo Keambiroiro, Maywood village manager, testified that on her last inspection of the Premises on March 21, 1989, she observed that defendants had done some work on the Premises, but the work was not in compliance with the Maywood Village Code. For example, defendants had enclosed the exterior of the Premises with interior paneling in a substandard manner, completely covering over window openings. The paneling was nailed in place only as far as Reginal could reach, even though the paneling extended to the roof. Defendants had removed the chimney and still had not installed any downspouts or drains. Dog feces and a decomposing cat were on the Premises grounds. Keambiroiro stated that although some intermittent work had been done, the Premises remained hazardous to the community's safety. In fact, the work done had added an additional weight load to the Premises which it was not structurally equipped to support.

Kenneth Massa, director of code enforcement for Maywood, agreed with Keambiroiro's assessment of defendants' attempts to repair the Premises. Massa noted that an attempt had been made to reconstruct the front steps, but defendants had not applied for a permit, and the steps had no guard rails or railings and were not up to standard. Further, the paneling used on the exterior was a low-grade, interior plywood-type paneling that was not water-tight, had not been nailed properly and did not meet the Maywood Village Code standards. Anthony Thomas, code enforcement officer for Maywood, agreed with the testimony of Keambiroiro and Massa.

■ As the foregoing indicates, during the 11-month period from the issuance of the violation notice to the March 29 hearing, defendants had done some work on the Premises. However, this work was not done in good-faith compliance with the Maywood Village Code and did not alter the structural defects or the general inhabitability of the Premises. This court has held that temporary measures cannot be allowed to circumvent the effect of section 11—31—1 of the Illinois Mu-

nicipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—31—1) and to "borrow time" for the necessary renovation. Further, temporary measures will not be considered in reaching a determination as to whether the building was dangerous and unsafe. (*City of Alton v. Carroll* (1982), 109 Ill. App. 3d 156, 440 N.E.2d 290.) Accordingly, defendants' failure to make repairs in compliance with the Maywood Village Code, as well as their failure to submit a good-faith schedule of repairs, demonstrated their lack of diligence.

Regarding the sufficiency of an excuse for waiting until the day of the hearing to request a continuance, the record is void of any attempt by defendants to explain why they could not have requested a continuance at an earlier date. The alleged grounds for the continuance had clearly arisen prior to the day of the hearing: the attorney who allegedly had been helping Reginal prepare his representation had died three weeks earlier, and the sale of defendants' other property had been negotiated at an earlier time.

Finally, regarding the gravity of the reasons given by defendants for a continuance, the trial court noted that defendants were not indigent; they just had a "shortness of funds." Furthermore, the trial court found that there had been a "substantial amount of time" from the time of filing to the present for defendants to have hired counsel. In addition to the findings of the trial court, the record indicates that defendants offered no evidence that the sale of another property owned by them was imminent. They presented only a copy of a title report, which is not proof that a contract has been entered into for the sale of property or that financing has been approved. Furthermore, defendants vacillated as to the availability of the funds from that alleged sale. Initially, defendants stated that the sale would close in 10 to 15 days from the date of the hearing. Then, when the Village agreed to have defendants put $25,000 in escrow within 15 days of the hearing, defendants wanted an additional two weeks because "mortgages don't pay out as scheduled." Based on the aforementioned, even if it had been within the trial court's discretion to grant the continuance without a written motion, the trial court would not have abused its discretion in denying the motion.

Moreover, although the trial court denied the continuance on March 29, it reserved its ruling until April 26, at which time a status hearing was held to check on any repairs made by defendants. By reserving its ruling, the trial court allowed defendants an additional 28 days within which to acquire the necessary funds to renovate the Premises. Thus, in effect, defendants were given the additional time they had requested. In our view, defendants' failure to make any at-

tempts to repair the Premises or to appear at the April 26 hearing is further evidence of their lack of good faith and diligence.

■ Defendants' additional argument that they were not given reasonable time to repair the Premises is unpersuasive. As indicated, defendants had one year from the time the violation notice issued to the final status hearing when the order of demolition was entered. During that time, they made some attempts at cosmetically improving the Premises, but there is no evidence that any structural work was attempted to make the Premises safe, or that any of the work done was in compliance with the Maywood Village Code. (*City of Chicago v. General Realty Corp.* (1971), 133 Ill. App. 2d 662, 273 N.E.2d 712 (10 months was a reasonable time within which to repair a building).) Further, in *Village of Gurnee v. Miller* (1975), 25 Ill. App. 3d 915, 323 N.E.2d 416, the court affirmed demolition of private property on the grounds that the owners had allowed the property to remain vacant with ready access to vagrants for seven years. In the present case, testimony at the hearing indicated that the Premises had been vacant with ready access to vagrants for 10 to 12 years. Accordingly, we find that defendants had been given a reasonable opportunity to repair the Premises.

Those cases relied upon by defendants in which the reviewing court reversed the demolition order are factually distinguishable from the present case. *City of Aurora v. Meyer* (1967), 38 Ill. 2d 131, 230 N.E.2d 200 (cause remanded to obtain evidence as to the cost of repair compared to the value of the structure); *City of Chicago v. Busch* (1971), 132 Ill. App. 2d 486, 270 N.E.2d 249 (plaintiff's witnesses testified that the building had depreciated no more than 18%; the record was silent as to the property's value, the cost of repairs or the condition of the structure; defendant had obtained a permit to make the repairs and had applied to the plaintiff city for a loan); *City of Chicago Heights v. Furrer* (1981), 99 Ill. App. 3d 414, 425 N.E.2d 1125 (evidence established that structure was repairable; no record of grounds for trial court's conclusion that the building was unsafe and dangerous).

■■■ In addition, defendants contend that the Village's amended petition to demolish or to repair was insufficient to apprise defendants of the defects to the Premises. Further, defendants argue that had they been represented by competent counsel, they would not have erroneously believed that the bankruptcy stay applied to these proceedings, they would not have filed a premature notice of appeal, they would not have failed to appear at the final status hearing when the order to demolish was entered, and they would have had an effective

cross-examination of Motiryo Keambiroiro, Maywood village manager. With respect to the sufficiency of the pleadings, defendants have waived this issue on appeal by failing to object to the notice at trial court. (*City of Peru v. Bernardi* (1976), 43 Ill. App. 3d 31, 356 N.E.2d 636.) As to defendants' argument that had they been represented by counsel, the outcome would have been different, mere speculation and the raising of possibilities do not provide grounds for reversal. (See *Norman v. Ford Motor Co.* (1987), 160 Ill. App. 3d 1037, 513 N.E.2d 1053; *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116.) Further, as previously stated, defendants had had ample time within which to hire legal counsel. They cannot now claim their lack of diligence in doing so as grounds for reversal.

Based on the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.