2021 IL App (1st) 210047-U

FIFTH DIVISION
August 6, 2021

No. 1-21-0047

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

<table>
<tr><td><i>In re</i> MARRIAGE OF<br>ERIKA BUSH,<br><br>    Petitioner-Appellee,<br><br>and<br><br>EDWIN F. BUSH,<br><br>    Respondent-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Appeal from the Circuit Court of<br>Cook County<br><br><br>No. 2017 D 230075<br><br><br>Honorable John T. Carr,<br>Judge, presiding.</td></tr>
</table>

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    ***Held:*** We strike the appellant's brief for violations of Illinois Supreme Court Rule 314(h) and dismiss this appeal from an entry of a plenary order of protection.

¶ 2    In September 2020, Erika Bush filed a petition for an emergency order of protection against Edwin Bush and on behalf of herself and the parties' two children, J.B. and A.B. After a hearing, the circuit court granted an emergency order of protection, which this court affirmed. *In re Marriage of Bush*, 2020 IL App (1st) 201035-U, ¶ 36. Edwin now challenges the circuit court's

subsequent entry of a two-year plenary order of protection. We strike his brief for violations of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) and dismiss the appeal.

¶ 3                                FACTS

¶ 4     Our order on Edwin's most recent previous appeal outlines the appellate and procedural history of this case. See *Bush*, 2020 IL App (1st) 201035-U, ¶ 2. Therefore, we limit our recital of facts to those necessary for our present analysis.

¶ 5     In her September 2020 petition for an order of protection, Erika alleged that Edwin had caused a disturbance at the children's school, had come to her apartment building, and left disparaging written signs. Steve Wasko, the children's guardian *ad litem* (GAL), Erika, and Edwin all testified at a hearing on the petition, held via video conferencing software. The circuit court granted the petition and entered a written emergency order of protection. The order included a hearing date of October 19, 2020 and was set to expire at 4:30 p.m. that same day.

¶ 6     On October 8, 2020, the circuit court signed a case management order which provided that, *inter alia*, "[t]he Order of Protection return date of October 19, 2020 shall stand." On October 13, the circuit court signed an order "vacat[ing] in its entirety" the October 8 order.

¶ 7     On October 19, 2020, the parties appeared before the circuit court via video conferencing software. At that hearing, Edwin argued that by vacating the October 8 order, the circuit court also struck the October 19 hearing date for the order of protection. The circuit court agreed that it would be "sandbagging" Edwin to allow Erika to present her case on the order of protection given that the hearing date had been stricken. Over Edwin's objection, the circuit court extended the emergency order of protection until December 15, 2020 and set a hearing for the same date.

¶ 8     On December 15, the circuit court held a hearing on the petition for a plenary order of protection. Edwin objected to the court going forward with the hearing. First, he argued that the

circuit court had impermissibly extended the emergency order of protection on October 19. Consequently, he reasoned, there was no pending issue before the court. Second, he objected to proceeding because he had a calendar conflict. He had learned on December 8 that he was to attend an oral argument rehearsal before the Seventh Circuit Court of Appeals at the same time as the plenary order of protection hearing. Edwin then logged out of the hearing to attend the rehearsal, and the circuit court proceeded without him.

¶ 9    At the hearing on the plenary order of protection, Steve Wasko testified that he had learned of an altercation between Edwin and staff at the children's school. He later discussed the incident with J.B. and learned that J.B. was at recess when Edwin arrived on the campus. J.B. told Wasko that he was "freaked out" and scared by Edwin's behavior. Wasko testified that J.B. told him that his father "scares him" and that Edwin "gets very mad."

¶ 10    The next witness was Erika. She testified that she had also learned about the incident at the school. She testified that when she picked J.B. up from school that day, "he was afraid; he was nervous; he was scared."

¶ 11    Erika also testified that, on another occasion, Edwin had come to her apartment building uninvited and yelled at her through the intercom. He then left handwritten signs in common areas of her building, calling her a "child abuser". Photos of those signs were entered into evidence.

¶ 12    Edwin rejoined the hearing at the end of Erika's direct testimony. Edwin argued that the court violated his due process rights by proceeding without him. He also argued that he was unable to cross-examine Erika because he was unaware of the content of her direct testimony.

¶ 13    The next witness was Dr. Erika Mickelburgh, the principal of the children's school. Edwin objected on "law of the case" grounds. He contended that, because the circuit court did not premise

its emergency order on the school incident, it had effectively made a directed finding that the school incident did not create grounds for an order of protection. The court overruled the objection.

¶ 14    Dr. Mickelburgh testified that Edwin had come to the school to see J.B. When he was told that he could not, "[Edwin] got very loud. He started using profanity." Ultimately, she decided to call the police and have Edwin escorted from the campus.

¶ 15    Edwin cross-examined Dr. Mickelburgh on the school's recess schedule, and whether J.B. would have been at recess at the time he was on campus. He also cross-examined her on which documents she relied upon in forming her belief that Edwin was not allowed to visit the children at school. She testified that she "did not have any orders saying that [Edwin was] able to" see the children.

¶ 16    Edwin then recalled Steve Wasko. Wasko testified about his qualifications as a GAL. He also testified that he had not interviewed J.B. about whether he had seen the handwritten signs. Wasko testified that he had not interviewed the children between the filing of the petition and the day before the plenary order of protection hearing. He also testified that J.B. had told him that he was scared by an incident at the last reunification therapy session.

¶ 17    Edwin then testified. He testified that on August 15, 2020, he went to Erika's building because he wanted to check on the children. He found her name on the intercom and called her. Edwin testified that Erika did not answer the first call. He testified that Erika answered the second time. He said, "Hi, I'd like to see the kids." Then Erika immediately hung up.

¶ 18    Edwin testified that on August 18, 2020, he placed handwritten signs outside of Erika's building that said, "Erika Bush, child abuser. Park Ridge Police and Cook County Courts let her get away with it. JB and AB, your daddy loves you." Edwin also testified that he placed a sign outside of the Park Ridge Police Department, which read, "Park Ridge Police Department enables

child abusers. Go do a well-being check at [Erika's address]. My children are hostages thanks to you."

¶ 19    Edwin testified that about a month later, he went to visit J.B. at his school. He went to the school at around 1:00 p.m. and did not see his son out at recess. He did not believe that his son saw him either.

¶ 20    He then testified that during the last reunification therapy session, Erika's mother was present. Edwin testified that he tried to take J.B. aside and tell him that he would like to spend more time with him, but Erika grabbed J.B. by the shoulder and pulled him away. Edwin testified that he told Erika and her mother that they should be ashamed of themselves and called Erika's mother an "old hag."

¶ 21    After closing argument by each side, the court found that grounds existed for the entry of a plenary order of protection. The court found that "Mr. Bush at this point is a serious endangerment to the children." The court ruled that Edwin was to have no contact with the children and that he was to have a mental evaluation. On December 16, 2020, the circuit court signed a two-year plenary order of protection.[1] This appeal follows.

¶ 22                            ANALYSIS

¶ 23    Edwin's claims on appeal fall generally into three categories: (1) that the circuit court lacked subject-matter jurisdiction to enter the plenary order of protection, (2) that the circuit court violated his due process rights by conducting part of the hearing without him, and (3) that, in various ways, the plenary order of protection was predicated on misstatements or misrepresentations of the status of the underlying custody case.

---

[1] The order is dated December 16, 2020, but bears a December 21, 2020 timestamp from the Clerk of the Circuit Court.

¶ 24    These claims of error, particularly those directly related to the bases for and content of the plenary order of protection, are virtually impossible for this court to meaningfully address. Despite including over thirty pages of facts in his brief on appeal, and despite the fact that the plenary order is the actual order under review in this limited interlocutory appeal, Edwin summarized the entire hearing and the plenary order of protection itself in a total of two sentences: "On December 15, 2020, the Circuit Court held a hearing on the plenary order of protection and granted it. [Citation.] The plenary order of protection was entered on December 21, 2020."

¶ 25    Compliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) is mandatory, even for *pro se* litigants. See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory regardless of a party's *pro se* status). If an appellant's brief fails to comply with the applicable rules of appellate procedure, we may strike that brief and dismiss the appeal. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. We acknowledge that striking a brief for failure to comply with supreme court rules is a harsh sanction (*In re Detention of Powell*, 217 Ill.2d 123, 132 (2005)), but we have little other option when faced with an extreme case.

¶ 26    Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) governs the form and content of briefs in this court. The Rule requires that appellants include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to *** the record." *Id.* § (h)(6).

¶ 27    Edwin's statement of facts includes no fewer than nine pages dedicated to events from 2018 or earlier, but it provides this court with no information about the order actually under review or the lengthy evidentiary hearing that led to its entry. Edwin's statement of facts reduces the testimony of five witnesses, the introduction of exhibits into evidence, closing arguments,

numerous objections, and a four-page written order to two cursory sentences. That simply cannot satisfy Rule 341(h)(6) and does not supply this court with sufficient information to conduct a meaningful review. Consequently, we strike the brief and dismiss the appeal.

¶ 28 We note that Edwin's two main arguments would be unavailing even if we overlooked the deficiency of his brief. His primary argument is that the circuit court lacked subject-matter jurisdiction to enter a plenary order of protection. He argues that the emergency order of protection expired by its own terms on October 19, 2020. The circuit court's order extending the emergency order beyond that date, he contends, was in error. When the emergency order lapsed, Edwin argues, so did the circuit court's jurisdiction to rule on the petition for a plenary order of protection and that we must, consequently, vacate the plenary order.

¶ 29 Assuming, *arguendo*, that Edwin is correct that the circuit court erred in extending the emergency order of protection on October 19, the emergency order of protection lapsed on that date. The circuit court's alleged error, however, does not have the sweeping consequences that Edwin alleges. He argues that the lapse of the emergency order deprived the circuit court of jurisdiction to hear the petition for a plenary order of protection. However, Edwin cites no authority for that proposition. Indeed, this court has explicitly held that the lapse of an interim order of protection does *not* deprive a trial court of subject-matter jurisdiction. *Scheider v. Ackerman*, 369 Ill. App. 3d 943, 945 (2006). The arguments advanced in *Scheider* are identical to those here. The appellant in that case challenged the validity of a plenary order of protection on the ground that the trial court lost jurisdiction when its previously-entered interim order of protection expired. *Id.* at 944. Neither the appellant nor the court could identify any legal authority to support that argument. *Id.* at 945.

¶ 30    In keeping with the *Scheider* court, we find that Edwin's jurisdictional argument is meritless. The circuit court maintained subject-matter jurisdiction beyond October 19, regardless of the status of the emergency order.

¶ 31    Edwin's second argument is similarly flawed. He contends that the circuit court erred by proceeding to hearing even though he had a schedule conflict with another court. Litigants do not have an absolute right to a continuance. *K & K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22. Thus, the decision whether to grant or deny a motion to continue is within the sound discretion of the trial court and will not be disturbed unless palpable injustice results or denial constitutes a manifest abuse of discretion. *Id.*; 735 ILCS 5/2-1007 (West). "A circuit court's ruling is considered an abuse of discretion when it is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Id.* "Further, once a case has reached the hearing stage, no motion for continuance is to be heard without sufficient excuse being shown for delay in so moving, and without grave reasons being presented to support the request." *Village of Maywood v. Barrett*, 211 Ill. App. 3d 775, 783 (1991) (citing *Mireles v. Indiana Harbor Belt R.R. Corp.*, 154 Ill. App. 3d 547 (1987).

¶ 32    Notably, Edwin knew well ahead of time that he had a schedule conflict, but he consciously decided not to move for a continuance. The record on appeal includes an email from Edwin to opposing counsel, the GAL, and court staff to let them know that he first learned of the conflict on December 8, 2020. However, he wrote, "I am not filing a continuance motion because there is no matter to continue. This Court had no jurisdiction to act on anything after it struck the October 19, 2020 return date." Given Edwin's explicit decision not to move for a continuance in a timely matter, we cannot find that the circuit court's denial of his day-of objection to proceeding was an abuse of discretion. See *Id.* at 784-85 (affirming the denial of an oral motion for continuance on

the day of a hearing where "[t]he alleged grounds for the continuance had clearly arisen prior to the day of the hearing").

¶ 33    The remainder of his contentions go to the bases and content of the order of protection. As discussed above, Edwin's brief does not provide sufficient factual background for this court to review that order or the circuit court's rulings during the hearing.

¶ 34    Finally, this court has repeatedly admonished Edwin, who is a licensed attorney, about his incivility. See, *e.g.*, *Bush*, 2020 IL App (1st) 201035-U, ¶ 35. We even took the extraordinary step of directing the clerk of this court to send a copy of our order to the Attorney Registration and Disciplinary Commission (ARDC). *Id.* Despite our earlier admonition, Bush has continued to proceed in an inappropriate manner. The record on appeal includes fresh obloquies such as telling the judge, "I hope you rot in hell you sorry—sorry sack of human filth," and saying to the GAL, "I could go to the Star Wars Cantina and find more reputable people than you. You're a scumbag." We once again direct the clerk of this court to transmit a copy of this order to the ARDC for its information with respect to the actions of Edwin Bush. See *Cushing v. Greyhound Lines, Inc.*, 2013 IL App (1st) 103197, ¶ 380 (directing "the clerk of the appellate court to send a copy of [the] opinion to the [ARDC] in order to allow the ARDC to further consider the actions of the attorneys").

¶ 35                                        CONCLUSION

¶ 36    We strike Edwin's brief for violations of Rule 341(h) and dismiss the appeal.

¶ 37    Dismissed.