JOHN P. CURTIN *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* DORTHA OGBORN, Defendant and Counterplaintiff-Appellee.

First District (2nd Division)   No. 78-1742

Opinion filed August 21, 1979.

James J. Conlon, of James J. Conlon & Associates, of Chicago, for appellants.

Arthur Rosenblum, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiffs and counterdefendants, John P. Curtin and Denise Curtin (hereinafter referred to as plaintiffs), brought an action in equity to obtain a refund of the earnest money they had deposited pursuant to a real estate sales contract. Defendant and counterplaintiff, Dortha Ogborn (hereinafter referred to as defendant), filed a counterclaim for breach of contract. The trial court dismissed the complaint for want of prosecution and entered judgment for defendant on the counterclaim. Plaintiffs appeal, presenting the following issues for review: (1) whether the trial court abused its discretion in denying plaintiffs' motion for continuance; (2) whether there was sufficient evidence of a breach of contract by plaintiffs; and (3) whether the judgment of earnest money plus attorney's fees was proper.

We affirm in part and reverse in part.

On March 27, 1974, plaintiffs executed a real estate sales contract with the First National Bank of LaGrange as trustee under trust number 507, whereby plaintiffs agreed to purchase and the trustee agreed to sell certain real property located in LaGrange, Illinois, for a sum of $87,000. Defendant was the sole beneficial owner of the trust. Plaintiffs deposited as earnest money with the real estate agency, Joseph A. Thorsen, three promissory notes, one for $2000 due March 29, 1974, one for $2000 due June 3, 1974, and one for $4500 due September 3, 1974. The first note was redeemed, and the sum of $2000 plus the other two notes were held by Thorsen pending consummation of the sale.

The contract in question was subject to the purchasers procuring within 20 days a loan commitment in the amount of 75% of the purchase price with an interest rate not to exceed 7.9% for a period of 25 years. The contract privided, *inter alia,* that the closing date was September 3, 1974, and that "time was of the essence." The contract further provided:

"If this contract is terminated without Purchaser's fault, the earnest money shall be returned to the Purchaser, but if the termination is caused by the Purchaser's fault, then at the option of the Seller and upon notice to the Purchaser, the earnest money shall be forfeited to the Seller and applied first to the payment of Seller's expenses and then to payment of broker's commission; the balance, if any, to be retained by the Seller as liquidated damages.

* * *

In the event this transaction is not closed because of the purchaser's

default, seller shall not be liable for any real estate commission to any real estate broker herein involved."

The sale to plaintiffs was never consummated.

On January 3, 1975, plaintiffs filed an action against defendant, the First National Bank of LaGrange as trustee and Joseph Thorsen, alleging that plaintiffs performed their duties under the contract but were unable to secure a mortgage and that they notified the trustee within the 20-day period provided in the contract but the trustee, Thorsen and defendant refused to return the earnest money to plaintiffs. Plaintiffs requested the court to order the return of the earnest money to them.

On February 3, 1975, defendant filed a counterclaim against plaintiffs alleging that defendant was and had been ready, willing and able to perform in accordance with the contract; that she was not notified until June 27, 1974, that plaintiffs were unable to perform; that plaintiffs terminated the contract through their own fault and are not entitled to a refund of the earnest money; and that defendant is entitled to receive the money and the notes held by Thorsen. Defendant also filed a third-party complaint against Thorsen requesting that Thorsen be directed to deliver to defendant the sum of $2000 and the two notes.

On February 5, 1975, the First National Bank of LaGrange filed a motion to dismiss the bank as a party defendant alleging that the bank was a misjoined party because the bank signed the contract in question as trustee at the written direction of the beneficial owner and not individually. On April 22, 1975, the court dismissed the bank as a party with leave to plaintiffs to reinstate the bank as a party at a subsequent date.

On December 13, 1975, a by-agreement order was entered dismissing Thorsen from the action with prejudice to plaintiffs and defendant and ordering Thorsen to continue to hold the earnest money pending disposition of the action and then to tender the earnest money as directed by the court.

The trial date was set for April 24, 1978. On the date of trial plaintiffs filed a motion to dismiss the action voluntarily or for a continuance alleging that plaintiffs were out of town and were unable to appear for trial on that date. The trial court denied the motion for continuance and dismissed plaintiffs' complaint for want of prosecution. The court then proceeded on the counterclaim for breach of contract.

Defendant testified that on March 27, 1974, she was the sole beneficial owner of real property at 344 South Sixth Avenue, LaGrange, Illinois. The legal title was held by First National Bank of LaGrange as trustee. Defendant directed the trustee to execute the contract dated March 27, 1974, to sell the property to plaintiffs. The contract was signed by Charles F. Kennedy, president of the bank, as trustee. On May 6, 1974,

defendant had a conversation with plaintiff John Curtin and she informed him that there was a tenant in the garage apartment and she wanted to know whether he could remain on the premises. Also, defendant told plaintiff that she found a house she was interested in purchasing and she wanted to know if the closing could be earlier than September as provided for in the contract. Plaintiff told her there would be no problem. Plaintiff apologized for "dragging his feet" in regard to the financing and said he would work on arranging financing the next week. Defendant made an offer on the house and gave a note as the down payment on May 8, 1974. Defendant had to withdraw the offer after the contract with plaintiffs failed; however, defendant sustained no dollar damages as a result of the withdrawal.

Defendant testified further that she had been prepared to close and deliver a deed or direct the trustee to deliver a deed to plaintiffs. Defendant did not receive notice until June 27, 1974, that plaintiffs were not going to consummate the contract. The sale was never closed and defendant requested but never received the earnest money. The property in question was sold to a third party in November 1975 for $91,000. Between September 3, 1974, and November 1975 defendant installed a new heating plant in the house at a cost of $3000, paid the taxes of $1500 for the year and paid interest on a mortgage in the amount of $232.50 per month. Defendant also paid $150 in attorney fees as a result of the contract with plaintiffs.

Based on defendant's testimony, the court found that plaintiffs breached the contract and defendant was granted judgment in the amount of the earnest money plus $150. The court ordered Thorsen to deliver to defendant within five days the sum of $2000 and the two promissory notes signed by plaintiffs.

On May 24, 1978, plaintiffs filed a motion to vacate the order of April 24, 1978. The motion was accompanied by an affidavit of plaintiff John Curtin in which he stated that on April 15, 1974, he mailed a letter to the trustee informing it that plaintiffs were unable to obtain financing, but that Thorsen was assisting plaintiffs in obtaining financing. The court denied the motion to vacate.

Plaintiffs initially contend that the trial court abused its discretion in denying plaintiffs' motion for continuance.

Section 59 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 59) provides that on good cause shown, the court, in its discretion, may grant a party additional time for the doing of any act prior to judgment. Supreme Court Rule 231 (Ill. Rev. Stat. 1977, ch. 110A, par. 231) further provides in pertinent part that:

"(f) * * * No motion for the continuance of a cause made after

the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."

It is well established that the trial court had broad discretion in allowing or denying a motion for continuance. (*Bullistron v. Augustana Hospital* (1977), 52 Ill. App. 3d 66, 367 N.E.2d 88, *appeal denied* (1978), 67 Ill. 2d 591.) The exercise of such discretion will not be disturbed on appeal unless there has been a manifest abuse of discretion or a palpable injustice. (*Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 790, 372 N.E.2d 385, *appeal denied* (1978), 71 Ill. 2d 603; *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 358, 366 N.E.2d 327, *appeal denied* (1977), 66 Ill. 2d 639.) A trial court should not refuse to grant a continuance where the ends of justice clearly require it. (*Bullistron*, 52 Ill. App. 3d 66, 70.) As stated in *Jancauskas v. Tow Motor Corp.* (1970), 126 Ill. App. 2d 289, 292, 261 N.E.2d 753:

"The dismissal of a party's cause of action is drastic punishment and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious disregard of the court's authority."

Thus, a decisive factor in determining the propriety of the trial court's discretion in ruling on a motion for continuance is whether the party requesting the continuance has shown a lack of due diligence in proceeding with the cause. *Bullistron*, 52 Ill. App. 3d 66, 70; *Parker v. Newman* (1973), 10 Ill. App. 3d 1019, 1021, 295 N.E.2d 503.

■■ In the case at bar plaintiffs' counsel presented the motion for continuance on the date of trial, stating in open court that it was necessary for plaintiffs to go out of town, that he advised plaintiffs not to leave town until he checked the status of the case, and that he spoke to the trial judge on April 20, 1978, and was told that the trial date of April 24, 1978, was firm but that he was thereafter unable to contact plaintiffs. Plaintiffs' counsel did not specify the facts to which plaintiffs would testify and did not state when they would be available for trial. The trial court in denying the motion noted that the trial date had been set three months prior. Based on the record we cannot conclude that there was a manifest abuse of discretion by the trial court. Although the record does not indicate that plaintiffs lacked due diligence in any manner prior to the date of trial, it is clear that they ignored the advice of their attorney and failed to appear for trial. In *Koenig v. Nardello* (1968), 99 Ill. App. 2d 480, 241 N.E.2d 567, the appellate court found no abuse of discretion when the trial court denied a motion for continuance made on the date of trial because defendant was out of town. Further, in *Westlake v. Moffitt* (1975), 30 Ill. App. 3d 597, 334 N.E.2d 198, defendant's counsel presented on the date of trial a motion for continuance alleging that defendant was under the care

of his physician and his absence would deprive him of material evidence for his defense. The appellate court held that denial of the motion was not an abuse of discretion since counsel did not specify the facts to which defendant would testify and did not state when defendant would be available for trial. Similarly in the case at bar, we find that the trial court's denial of plaintiffs' motion did not constitute a manifest abuse of discretion.

■■ Plaintiffs next contend that defendant failed to present sufficient evidence of a breach of contract by plaintiffs because defendant did not call the trustee as a witness to testify that the trustee did not receive notice within the 20-day period provided for in the contract. The record shows that defendant testified that she did not receive notice that plaintiffs were unable to secure financing until June 27, 1974, which was after the 20-day period. Defendant's testimony was uncontradicted and was sufficient to establish a breach of contract by plaintiffs. Since plaintiffs' defense to the counterclaim was compliance with the terms of the contract, the burden of proving that notice was given during the 20-day period was on plaintiffs. It is true that when plaintiffs filed a post-trial motion, they also submitted a letter dated April 15, 1974, which allegedly was sent to the trustee informing the trustee that plaintiffs were unable to secure financing. However, since plaintiffs also stated in the letter that they were continuing to seek financing, it was not clearly established that plaintiffs were terminating the contract. Also, there is some question as to whether this letter actually was sent to the trustee since plaintiffs' actions after the letter allegedly was sent indicated that they did not consider the contract terminated and further since the subsequent notice dated June 27, 1974, did not refer to the prior letter. Thus, we conclude that the determination of the trial court was not against the manifest weight of the evidence.

Plaintiffs' final contention is that the judgment of $150 plus $8500 in earnest money was excessive and constituted a penalty against plaintiffs for breach of contract. Defendant contends that the parties specifically contracted for a forfeiture of earnest money in the event of a default by plaintiffs and that the court properly gave effect to the parties' agreement.

■■ ■ It has been held that although courts of equity abhor forfeitures, where a forfeiture has been declared in the manner prescribed by parties to a contract, courts will give effect to the contract. (*Eade v. Brownlee* (1963), 29 Ill. 2d 214, 193 N.E.2d 786; *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42.) Generally, courts will enforce a liquidated damages provision in a real estate sales contract where it can be shown (1) that the parties' intent was to agree in advance as to the settlement of damages that might arise upon a breach of the contract; (2) that the amount provided as liquidated damages was reasonable at the time of contracting and that it bears some relation to the actual damages which

might be sustained; and (3) that the actual damages would be difficult to prove and uncertain in amount. (*Hayden v. Keepper-Nagel, Inc.* (1978), 62 Ill. App. 3d 828, 830-31, 379 N.E.2d 116; *Heckmann v. Mid States Development Co.* (1965), 60 Ill. App. 2d 113, 118, 207 N.E.2d 715.) Several courts have held that in the event of a default by the buyer, the earnest money may be retained in full by the seller without reference to the actual damages which may have resulted to the seller from the buyer's default (*Pruett v. La Salceda, Inc.* (1977), 45 Ill. App. 3d 243, 247, 359 N.E.2d 776; *Linster v. Regan* (1969), 108 Ill. App. 2d 459, 463, 248 N.E.2d 751), but that the seller is not entitled to any additional recovery. *Kohenn v. Plantation Baking Co.* (1975), 32 Ill. App. 3d 231, 236, 336 N.E.2d 491.

■■ The evidence in the case at bar indicates that the parties' intent at the time of contracting was that the earnest money was to constitute liquidated damages in the event of a default by plaintiffs. This is evidenced by the fact that a portion of the printed-form contract referring to liability for the broker's fee was deleted and a typewritten provision was added to the contract. Defendant testified that she sustained some monetary damages as a result of plaintiffs' breach of contract in that she had to continue paying property taxes and interest on a mortgage until the property was sold to another party and she had to pay attorney's fees for the drafting of the contract. Also, defendant was forced to withdraw an offer she had made on another house. Although there was no out-of-pocket dollar loss to defendant as a result of the withdrawal, she was damaged to some extent that is uncertain in amount. Further, courts have upheld the retention of earnest money upon a buyer's default when the amount constituted 10% of the purchase price or less as in the case at bar. (See *Kohenn.*) Thus, we find that the trial court did not err in ruling that defendant was entitled to the earnest money deposited by plaintiffs. However, we find that the court did err in awarding the additional $150 to defendant since a seller is not entitled to any recovery in addition to the liquidated damages. *Kohenn,* 32 Ill. App. 3d 231, 236..

Based on the foregoing we affirm the judgment for defendant in the amount of the earnest money. We reverse the judgment for defendant of the amount of $150 and we remand for proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part and remanded.

STAMOS, P. J., and HARTMAN, J., concur.