JEROME O'NEILL *et al.*, Plaintiffs-Appellants, v. LARRY D. BROWN *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—1137

Opinion filed January 22, 1993.

Michael D. Falls, Chartered, of Deerfield, for appellants.

William C. Peterman, of Peterman & Bohn, of Chicago, for appellees.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, Jerome and Lucille O'Neill, brought suit seeking injunctive relief under the Illinois Comprehensive Solar Energy Act of 1977 (Solar Energy Act) (Ill. Rev. Stat. 1989, ch. 96½, par. 7301 *et seq.*) alleging that a second-story addition to defendants' home would partially shade their greenhouse and would thus unlawfully encroach upon their "solar skyspace easement" which plaintiffs contend was created pursuant to the Solar Energy Act. The trial court dismissed plaintiffs' complaint under section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), finding that the Solar Energy Act did not create such an easement for sunlight. Plaintiffs appeal from this ruling.

FACTS

Plaintiffs' property is a residential structure with a rear addition containing a greenhouse and a breakfast room. Defendants' property, which is located directly south of plaintiffs' property, is a two-story house with a single-story addition at the rear of the residence. On Oc-

tober 13, 1989, defendants, Larry and Kathleen Brown, appeared before the Plan Commission and Zoning Board of Appeals of the Village of Lincolnwood (Plan Commission) and applied for a variance to add a second story to the addition at the rear of their house. Plaintiffs objected, contending that the addition of the second story on this portion of defendants' house would cast a large shadow on their greenhouse and breakfast room during the winter months.

Notwithstanding plaintiffs' objections, the Plan Commission made a positive recommendation to the Lincolnwood board of trustees, who on November 2, 1989, granted defendants' request for a variance. In so doing, the board noted that the variance exceeded the rear yard setback requirements by only 5.14 feet and did not expand the ground-level configuration of the home.

On January 16, 1990, plaintiffs filed an action for injunctive relief and for a declaratory judgment under section 2—701 of the Illinois Code of Civil Procedure against defendants and the Village of Lincolnwood. (Ill. Rev. Stat. 1989, ch. 110, par. 2—701.) In count I, plaintiffs alleged that the village board had abused its discretion in granting the variance and that its decision was arbitrary and confiscatory. In count II, plaintiffs sought an injunction under the Illinois Comprehensive Solar Energy Act (Ill. Rev. Stat. 1989, ch. 96½, par. 7301 *et seq.*) contending that their greenhouse was a "solar collector" within the meaning of the Solar Energy Act and that as such they had a "solar skyspace easement" which was being improperly encroached upon by defendants' addition.

Defendants and the Village of Lincolnwood each filed a motion to dismiss plaintiffs' complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) challenging the sufficiency of counts I and II. More specifically, with respect to count II, defendants argued that plaintiffs failed to state a cause of action under the Solar Energy Act because their residence did not constitute a "solar collector" within the meaning of the Solar Energy Act. On May 24, 1990, the trial court dismissed plaintiffs' complaint on all counts and with respect to all parties with leave to amend. On that same day, an agreed order was entered which dismissed the Village of Lincolnwood with prejudice with respect to count II of plaintiffs' complaint.

On June 20, 1990, plaintiffs filed an amended complaint naming only the Browns as defendants. In their amended complaint, plaintiffs only sought relief under the Solar Energy Act, alleging that their greenhouse qualified as a "solar collector" because it was attached to their property for the specific purpose, and with the specific design,

of gathering, concentrating or absorbing direct and indirect solar energy which would subsequently be used to heat the property.

On July 6, 1990, defendants filed a motion to dismiss plaintiffs' amended complaint under section 2—615, again arguing that the greenhouse was not a "solar collector" and that a "solar skyspace easement" was never created. On September 26, 1990, the trial court granted this motion to dismiss, stating that plaintiffs' greenhouse was not a "solar collector" as contemplated by the Solar Energy Act. The trial court reiterated its statement from the dismissal of plaintiffs' first complaint, "that a sunroom/greenhouse or a room such as described in this complaint is not the solar collector contemplated by this statute to which the easement could be created."

On October 15, 1990, plaintiffs filed a motion for leave to file a second amended complaint alleging new circumstances in that since September 26, 1990, they installed solar energy panels of the type contemplated "by the Act." Pursuant to that motion, the trial court granted plaintiffs leave to file a second amended complaint alleging installation of the solar energy panels and the protection afforded them by the Solar Energy Act. On November 19, 1990, defendants filed a motion to dismiss under section 2—619(a)(9) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)), arguing, among other things, that even with the new solar panels the Solar Energy Act does not create an automatic "solar skyspace easement." The motion to dismiss was set for hearing on March 22, 1991.

On February 27, 1991, plaintiffs filed a response to defendants' motion. On March 12, 1991, defendants filed a reply to plaintiffs' response. In their reply, defendants stated that the arguments raised in their motion to dismiss challenged plaintiffs' complaint for failing to state a cause of action and were therefore more properly brought under section 2—615. At that time, defendants attached excerpts from the legislative debates leading to the adoption of the Solar Energy Act to support their contention that the Act does not purport to recognize the creation of an automatic easement.

On March 19, 1991, plaintiffs filed a motion for leave to file a surreply brief and a motion for continuance of the March 22, 1991, hearing, contending that they did not receive defendants' response until March 18, 1991, and that that response contained new arguments under section 2—615. At the March 22, 1991, hearing, plaintiffs' counsel requested a continuance and objected to proceeding without the opportunity to file a surreply brief. In response, defendants' counsel stated that plaintiffs were three weeks late in filing their response to the motion to dismiss, thus delaying defendants' reply.

The trial court denied plaintiffs' motion for a continuance, noting that the case had been on the docket for a long time, that two motions to dismiss were already heard in the case, and that counsel was familiar with the case. The trial court then granted defendants' motion to dismiss under section 2—615, stating among other things that the Solar Energy Act did not create a "solar skyspace easement." Plaintiffs appeal from the court's order granting defendants' motion to dismiss and denying their motion to file a surreply brief and for a continuance.

OPINION

■ Plaintiffs first contend on appeal that the trial court erred in granting defendants' motion to dismiss their second amended complaint because the Illinois Comprehensive Solar Energy Act creates an enforceable "solar skyspace easement." In support of their contention that the Solar Energy Act creates such an easement, plaintiffs cite to section 1.2(f) of the Illinois Comprehensive Solar Energy Act (Ill. Rev. Stat. 1989, ch. 96½, par. 7303(f)), entitled "Definitions." This section provides:

"(f) 'Solar skyspace easement' means

(1) a right, whether or not stated in the form of a restriction, easement, covenant, or condition, in any deed, will, or other instrument executed by or on behalf of any owner of land or solar skyspace or in any order of taking, appropriate to protect the solar skyspace of a solar collector at a particularly described location to forbid or limit any or all of the following where detrimental to access to solar energy.

(a) structures on or above ground;

(b) vegetation on or above the ground; or

(c) other activity;

(2) and which shall specifically describe a solar skyspace in three dimensional terms in which the activity, structures, or vegetation are forbidden or limited or in which such an easement shall set performance criteria for adequate collection of solar energy at a particular location." Ill. Rev. Stat. 1989, ch. 96½, par. 7303(f).

Specifically, plaintiffs contend that the above definition creates an enforceable "solar skyspace easement" upon installation of a "solar collector." According to plaintiffs, the scope of this "solar skyspace easement" is established according to the performance criteria of section 1.2(e), which defines "Solar Skyspace" as the "maximum three dimensional space extending from a solar energy collector to all posi-

tions of the sun necessary for efficient use of the collector." (Ill. Rev. Stat. 1989, ch. 96½, par. 7303(e)(1).) We disagree.

Construction of a statute is a matter of law. (*Berrios v. Rybacki* (1989), 190 Ill. App. 3d 338, 546 N.E.2d 651.) The primary objective of statutory interpretation is to determine the legislative intent in enacting the statute. (*Kirwan v. Welch* (1989), 133 Ill. 2d 163, 549 N.E.2d 348.) Legislative intent is best evidenced by the words used in the statute. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656.) Courts will give effect to the legislative intent underlying the statute by "looking at the statute as a whole, taking into consideration its nature and its purposes and ascribing to each word, clause or sentence therein some reasonable meaning." (*Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, 368, 561 N.E.2d 295.) Moreover, statutes in derogation of the common law are strictly construed in favor of persons sought to be subjected to their operation and courts will read nothing into such statutes by intendment or implication. *In re W.W.* (1983), 97 Ill. 2d 53, 454 N.E.2d 207; *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323.

■ A statute which attempts to establish an easement for sunlight would be in derogation of the common law. Illinois common law has rejected the "ancient lights" doctrine which recognizes a prescriptive easement for light and air. (*Baird v. Hanna* (1927), 328 Ill. 436, 159 N.E. 793; *Keating v. Springer* (1893), 146 Ill. 481, 492, 34 N.E. 805; see also Note, *An Integrated Approach to Solar Access*, 34 Case W. Res. L. Rev. 367, 368 (1984), quoting *Keiper v. Klein* (1875), 51 Ind. 316, 323 ("Courts have historically shown great reluctance to interfere with land use on the basis of something 'so impalpable and fleeting as air and light' ").) In rejecting the existence of a right to solar access, courts have generally noted that "easements of light and air over adjacent premises are not favored because such devices inhibit the growth and the use of the land." Note, *Recent Cases*, 52 U. Cin. L. Rev. 208, 211 (1984).

In *People ex rel. Hoogasian v. Sears, Roebuck & Co.* (1972), 52 Ill. 2d 301, 287 N.E.2d 677, the Illinois Supreme Court addressed a nuisance action which was brought to halt construction of a building because it would interfere with television reception in the area. (52 Ill. 2d at 302.) Quoting from *Fontainebleau Hotel Corp. v. Forty-Five Twenty-Five, Inc.* (Fla. App. 1959), 114 So. 2d 357, the court stated:

"  'There being *** no legal right to the free flow of light and air from the adjoining land, it is universally held that where a

structure serves a useful and beneficial purpose, it does not give rise to a cause of action *** even though it causes injury to another by cutting off the light and air and interfering with the view that would otherwise be available over adjoining land in its natural state, regardless of the fact that the structure may have been erected partly for spite.' " *Hoogasian*, 52 Ill. 2d at 304, quoting *Fontainebleau Hotel*, 114 So. 2d at 359-60.

See also *American National Bank & Trust Co. v. City of Chicago* (1990), 209 Ill. App. 3d 96, 568 N.E.2d 25 (reaffirming the principles articulated in *Hoogasian*); *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 579, 325 N.E.2d 799 ("under Illinois law one property owner may not acquire a prescriptive or implied right to air, light, or ventilation over the land of another").

■ Taking into account the language and nature of the Solar Energy Act as a whole and the principles by which this court must be guided in construing the statute, we find that the language of the Solar Energy Act does not evidence a legislative intent to establish and give effect to a new property right of solar access.

The provision relied on by plaintiffs is contained in a definitional section of the Solar Energy Act under an official heading entitled "Definitions." (Ill. Rev. Stat. 1989, ch. 96½, par. 7303.) (See *People v. Lamb* (1992), 224 Ill. App. 3d 950, 953, 587 N.E.2d 61 (official heading or title of statute can provide guidance in interpreting statute); see also *Illinois Bell Telephone Co. v. Ames* (1936), 364 Ill. 362, 365, 4 N.E.2d 494 ("resort may be had to the title [of an act] to enable the court to discover the intent and make certain what is otherwise uncertain or ambiguous"); *Merchants National Bank v. Olson* (1975), 27 Ill. App. 3d 432, 325 N.E.2d 633.) It begins " 'Solar skyspace easement' *means* ***." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 96½, par. 7303(f).) The legislature's apparent intention in crafting this definition was not to create a right, but to give a uniform definition to certain terms in anticipation of future legislation, whether at the State or municipal level, which would include operative or enforcement language to establish and give effect to as yet undetermined solar rights. See 80th Ill. Gen. Assem., Senate Proceedings, May 20, 1977, at 95 (statement of Senator Nimrod: "The only thing that this bill does *** [is] put[ ] us in the position *** so that with the definitions and the uniformity, that we will be able to adapt and be able to take care of any of those funds that are available to the State of Illinois if we should so choose, but there are no programs and no monies that we mandated under the present proposal"); *Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 588 N.E.2d 1111 (legislative history of a

statute can be examined in order to determine the intent of the legislature in enacting the statute).

The Solar Energy Act's function as priming legislation is apparent from a reading of the Solar Energy Act in its entirety, particularly section 1.1(e) (Ill. Rev. Stat. 1989, ch. 96½, par. 7302(e)), which sets forth the underlying purposes of the Solar Energy Act. This section, entitled "Legislative findings," provides "[t]hat it is in the public interest to *define* solar energy systems, *demonstrate* solar energy feasibility, *apply incentives* for using solar energy, *educate the public* on solar feasibility, *study solar energy application* and coordinate governmental programs affecting solar energy." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 96½, par. 7302(e).) All of these purposes indicate an intent to initiate the development of solar energy use through education, studies, and incentive programs rather than the creation of solar rights.

The specific provisions of the Solar Energy Act also address and establish programs consistent with the aforementioned purposes of the Solar Energy Act, not the creation or regulation of a property right. These provisions authorize the Illinois Department of Energy and Natural Resources to develop incentive programs for encouraging the use of solar energy (Ill. Rev. Stat. 1989, ch. 96½, par. 7308), to develop educational programs for the public on the use and impact of solar energy (Ill. Rev. Stat. 1989, ch. 96½, par. 7310), to conduct policy studies on the relationship between public energy suppliers and solar energy systems (Ill. Rev. Stat. 1989, ch. 96½, par. 7312), and to provide refunds for the installation of solar energy systems. (Ill. Rev. Stat. 1989, ch. 96½, par. 7317.) The operative language of the statute is limited to studies, incentives and educational programs.

We note the conspicuous absence from the enumerated legislative findings, and their corresponding operative provisions, any mention of the creation of a "solar skyspace easement" or any similar corresponding alteration of existing property rights to accommodate solar energy systems. Private causes of action have been found to exist in statutes which do not expressly provide for them. (See *Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 378 N.E.2d 762 (holding that Retail Installment Sales Act contained a private right of action), *rev'd* (1979), 77 Ill. 2d 93, 395 N.E.2d 545 (basing its reversal of appellate court's decision recognizing a private cause of action on fact that private remedy of previous act was not reenacted in new act); *Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 183 (determining that Consumer Fraud Act contained a private right of action).) However, as the court noted in *Stewart v. Amoco Oil Co.*

(1979), 72 Ill. App. 3d 330, 389 N.E.2d 1323, these were elaborately drawn statutes which made certain practices unlawful and created liability and penalties on certain parties for violation of its provisions. (72 Ill. App. 3d at 337-38; see also *Rice*, 131 Ill. App. 2d at 441.) Here no penalties or liabilities are established nor is there any operative language establishing the existence of such easements.

In support of their position that the Solar Energy Act creates an easement, plaintiffs cite the preamble of the Solar Energy Act, placing emphasis on specific language:

> "AN ACT in relation to the comprehensive demonstration, encouragement, and *development of solar energy systems* and· a State solar energy program, to establish certain elements of said program, *to define certain terms and responsibilities, and to amend certain Acts in connection therewith.*" (Emphasis added by plaintiffs.) Preamble of the Comprehensive Solar Energy Act of 1977, Ill. Rev. Stat. 1989, ch. 96½, par. 7301 *et seq.*

While a preamble to an act can be examined in determining legislative intent (*Radford v. Cosmopolitan National Bank* (1964), 52 Ill. App. 2d 240, 201 N.E.2d 622), we fail to see how this language supports plaintiffs position that the legislature intended to create a "solar skyspace easement." The reference to "responsibilities" more than likely refers to those provisions of the Solar Energy Act which formulate the Solar Energy Program and the responsibilities of the Illinois Department of Energy and Natural Resources to implement that program. See Ill. Rev. Stat. 1989, ch. 96½, par. 7304.

In sum, plaintiffs would require that this court transform a single clause, written and postured as a definition, into an affirmative right for a prescriptive easement; a right which was explicitly rejected under common law. While it may be well within the legislature's power to change the law, and the adoption of definitions may signal the direction of that change, we cannot determine that the legislature intended to create a right to solar access solely by the enactment of this definition without further elaboration or amendment.

■ Plaintiffs' second argument on appeal is that the trial court erred in denying their motion for a continuance of the hearing date on defendants' motion to dismiss their second amended complaint. Specifically, plaintiffs complain that the defendants' motion to dismiss was brought under section 2—619 and that defendants' reply raised issues under section 2—615 and that defendants, for the first time, attached excerpts of the legislative debates surrounding the adoption of the Solar Energy Act to their reply. Plaintiffs rely primarily on *Cur-*

*tin v. Ogborn* (1979), 75 Ill. App. 3d 549, 394 N.E.2d 593, where the court stated that a continuance should not be denied "where the ends of justice clearly require it." 75 Ill. App. 3d at 553.

A litigant has "no absolute right to have a case continued." (*Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 510, 505 N.E.2d 1213.) The decision to deny a motion for a continuance is within the sound discretion of the trial court and such decision will not be disturbed absent an abuse of discretion or unless palpable injustice appears in the record on appeal. (*Village of Maywood v. Barrett* (1991), 211 Ill. App. 3d 775, 570 N.E.2d 645; *Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 474 N.E.2d 456.) A reviewing court must balance the prompt disposition of the case with the equally compelling interest in obtaining justice to determine whether an abuse of discretion occurred. *Schumacher v. Continental Air Transport Co.* (1990), 204 Ill. App. 3d 432, 562 N.E.2d 300.

A critical factor in determining whether the trial court abused its discretion in denying a motion for a continuance is whether the party exercised diligence below. (*Curtin*, 75 Ill. App. 3d at 553.) In this respect, plaintiffs filed their response to defendants' motion a month after it was due, compelling a one-month postponement of defendants' reply, which became due 14 days after the filing of plaintiffs' response.

In addition to plaintiffs' lack of diligence, we also note that the defendants presented similar arguments, that plaintiffs' greenhouse was not a solar collector and that no easement was present, in their two earlier motions to dismiss and that the earlier motions were similarly brought under section 2—615. While the late shift from a section 2—619 motion to a section 2—615 motion could well require that a continuance be granted, justice does not require it in a case such as this where the arguments between the parties have remained comparatively similar throughout the course of the litigation, minimizing the likelihood of any unfair surprise. Plaintiffs' attempt to characterize the legislative debates as new evidence which surprised them is not persuasive. Such debates are a conventional reference source in determining legislative intent which plaintiffs had an adequate opportunity to research prior to the filing of their response as well as during the course of the two earlier motions to dismiss. Therefore, we cannot conclude that the trial court abused its discretion in denying plaintiffs' motion for a continuance. Moreover, we note that plaintiffs had full opportunity to supplement their argument on appeal as to the applicability of the Solar Energy Act upon which their dismissal was predicated in the trial court so that whatever missed opportunities they

claimèd to have had in the trial court did not prejudice them in this appeal.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

MURRAY and COUSINS, JJ., concur.