SECOND DIVISION

No. 1-10-0979

| | | |
|---|---|---|
| THEODORE DALLAS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 08 CH 20671 |
| | ) | |
| CHICAGO TEACHERS UNION, | ) | |
| MARILYN STEWART, GAIL | ) | |
| KOFFMAN and PATTI WALSH, | ) | Honorable |
| | ) | Dorothy K. Kinnaird, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
**Presiding Justice Cunningham and Justice Connors concurred in the judgment.**

OPINION

Plaintiff Theodore Dallas sued the Chicago Teachers Union (CTU), Marilyn Stewart, Gail Koffman and Patti Walsh, alleging they engaged in a conspiracy to damage his reputation and have him removed as vice president of the CTU. Prior to trial, the parties entered into a settlement agreement. Plaintiff subsequently moved to enforce the agreement, asserting the CTU violated paragraph 2.1, which contains a confidentiality provision. The circuit court of Cook County granted the motion and ordered the CTU to pay plaintiff $100,000 in liquidated damages. Defendants filed this appeal. For the reasons set forth below, we affirm.

JURISDICTION

The circuit court's order granting plaintiff's motion to enforce the settlement agreement was entered on March 30, 2010. Defendants timely filed their notice of appeal on April 8, 2010. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

BACKGROUND

In June 2008 plaintiff filed his original complaint against the CTU; Stewart, who was then the president of the CTU; and Koffman and Walsh, who were CTU members. In the complaint and subsequent pleadings, plaintiff alleged defendants conspired to damage his reputation and force him from his elected position as vice president of the CTU. Plaintiff alleged defendants fabricated claims that he misused union funds, as a pretext for removing him from office. In August 2008, following a "trial" before the union's executive committee, plaintiff was found "guilty" of the charges against him. The union's appeals committee affirmed. Plaintiff was expelled from the CTU and terminated from his position as vice president. In his second amended complaint, plaintiff asserted claims for breach of the CTU's constitution and bylaws; tortious interference with plaintiff's rights under the constitution and bylaws; false light; and conspiracy.

In December 2008, following a motion by defendants to compel settlement negotiations, the circuit court entered a stipulation and order of referral directing the parties to submit to mediation. In May 2009, the parties entered into a confidential settlement agreement. Relevant portions include paragraphs 1.3, 2.1 and 4.

Paragraph 1.3 provides, in pertinent part:

"Upon acceptance of the payment indicated in Paragraph 1, Plaintiff also agrees that at no time before January 1, 2011[,] will he make a request for membership with the Chicago Teachers Union or be reinstated as a member with the Chicago Teachers Union. Plaintiff further agrees that at no time before 2011 will he run for or hold an elected position in the Chicago Teachers Union ***. Plaintiff may hold an appointed position provided he has been appointed by the President of the CTU and approved by the Executive Board in place at the time of the appointment."

Paragraph 2.1 provides:

"The CTU, including through its elected officers, employees and agents acting on its behalf, will not make any written or oral statement concerning [plaintiff] or the settlement in any of its publications or publicly at any CTU or union event, which includes without limitation publishing any editorials, letters, articles, etc. in any CTU or CTU related publication, including without limitation newsletters, mailings, delegate workshops, conventions, Executive Board Meetings, District Supervisor Meetings, and House of Delegates meetings. Each of Marilyn Stewart, Leslie Barron, Patti Walsh, Gail Koffman and [plaintiff] agrees not to issue any written statement disparaging any of the Defendants and/or [plaintiff]. Likewise, the parties agree that violation of this provision would cause substantial damage to [plaintiff] or the Union for which either would be entitled to damages depending on who violated this or any other provision of this Agreement. The parties mutually agree that such damage would be a minimum of One Hundred Thousand Dollars ($100,000.00) and that if such a violation occurs, [plaintiff] or the CTU[] will be entitled to a minimum of such damages and attorney's fees if [plaintiff] or the CTU successfully establish a violation of this provision. Both parties represent and warrant that neither party has issued such

3

a statement since at least February 1, 2009[,] through the execution of this Agreement."

In paragraph 4, titled "CONFIDENTIALITY,' the parties agreed that "the terms of the settlement agreement shall remain confidential but the parties may acknowledge that the case has been settled and dismissed."

Five months later, in October 2009, the Chicago Union Teacher, the official publication of the CTU, published an article which notified CTU members of three items scheduled to be voted on in an upcoming referendum. The article stated, in pertinent part:

"The second item before the membership is to create a constitutional provision is [sic] to codify that an officer who loses his or her membership also must relinquish office.

Without such a provision, action by the Executive Board in dealing with misconduct by an officer, as dictated by the Union's By Laws, can cause lengthy legal action as was the case last year when the former vice president was removed from office." (Emphases added.)

Also published in the October 2009 issue of the Chicago Union Teacher was an article concerning the accomplishments of the CTU's financial secretary, Mark Ochoa.  In describing Ochoa's achievements, the article stated, in relevant part:

"He was elected to his current position in 2004 and re-elected by a massive margin in 2007. Since that second election—due to the removal from office of the former vice president for inappropriate activities—Mr. Ochoa has had to take on increased responsibilities as a Union officer and has done so with his usual grace and good humor."  (Emphases added.)

In November 2009, the Chicago Union Teacher published an article which stated, in pertinent part:

4

"As most members will recall, the former Vice President was removed from membership in the Union in the fall of 2008 because of a number of charges brought against him, including misuse of Union funds, providing special benefits to some members over others, and inappropriate behavior toward colleagues. The Executive Board took the action against him following a trial at which evidence was presented and he and his legal counsel had the opportunity to present evidence and challenge the findings. The Constitution clearly gives the Executive Board the authority to act as it did. (Emphases added.)

It is undisputed that plaintiff is the "former vice president" referred to in each of these articles.

Plaintiff filed a motion to enforce the settlement agreement, asserting the CTU violated paragraph 2.1 of the agreement by publishing articles which included statements concerning him. In March 2010, following briefing and oral argument, the circuit court found the settlement agreement had been breached, and plaintiff was entitled to liquidated damages under paragraph 2.1. The court granted plaintiff's motion to enforce the agreement, and ordered the CTU to pay plaintiff $100,000 in liquidated damages. Defendants then filed this timely appeal.

ANALYSIS

Defendants challenge the validity of the liquidated damages provision in paragraph 2.1 of the settlement agreement. According to defendants, the provision is an unenforceable penalty, and the circuit court erred as a matter of law in determining it was enforceable. In Illinois, a liquidated damages clause is enforceable as long as (1) the parties intended to agree in advance to the settlement of damages that might arise from a breach, (2) the amount provided as liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained, and (3) the actual

damages would be uncertain in amount and difficult to prove. Jameson Realty Group v. Kostner, 351 Ill. App. 3d 416, 423 (2004); Curtin v. Ogborn, 75 Ill. App. 3d 549, 554-55 (1979). There is no fixed rule applicable to all liquidated damages agreements, and each must be evaluated on its own facts and circumstances. Jameson, 351 Ill. App. 3d at 423; Penske Truck Leasing Co. v. Chemetco, Inc., 311 Ill. App. 3d 447, 454 (2000). The validity of a liquidated damages provision is a question of law which is reviewed de novo. Jameson, 351 Ill. App. 3d at 424; Penske, 311 Ill. App. 3d at 454.

In the case at bar, the first and third elements of the test are not at issue. In their pleadings in the circuit court below, defendants expressly stated they did not dispute the first and third elements, explaining: "Actual damages in this case would be uncertain and difficult to prove, and the parties did intend to agree to a damage amount in advance." With regard to the second element, defendants argue the liquidated damages provision in paragraph 2.1 bears no reasonable relationship to the actual damages which plaintiff might sustain, and is therefore unenforceable.

In support of this argument, defendants assert paragraph 2.1 fails to address the content or veracity of potential statements made concerning plaintiff. Instead, under this provision, as contemplated by the circuit court's order, any statement about plaintiff by the CTU to its membership would trigger the $100,000 liquidated damages clause. Defendants appear to argue that, while some statements, such as remarks that are disparaging, might justify an award of $100,000 in damages, not every statement would. According to defendants, it is thus possible the actual damages plaintiff would suffer would not come close to $100,000. Defendants assert: "This figure has no conceivable relation to actual damages and is unenforceable."

6

The issue courts look at in this context is not whether the actual damages ultimately caused by the breach are exactly the same as the amount specified in a liquidated damages provision, but rather whether the liquidated damages amount is a reasonable forecast of and bears some relation to the loss, as forecast at the time of contracting. Jameson, 351 Ill. App. 3d at 423 (second element of test is whether "amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained"); see In re Schaumburg Hotel Owner Ltd. Partnership, 97 B.R. 943, 953 (Bankr. N.D. Ill. 1989) (concluding that, with regard to liquidated damages clause, parties not required to make the best estimation of damages, just one that is reasonable). In the case at bar, the $100,000 liquidated damages figure is clearly related to the projected actual loss. As the circuit court below stated in its order:

"The liquidated damages in the amount of 'a minimum of One Hundred Thousand Dollars ***' has a direct bearing on any future elected or appointed office Plaintiff may pursue with the Chicago Teachers Union. His prior salaries from 2004 to 2009 ranged from $121,383.99 to $180,886.82. In negotiating the Release and Settlement Agreement, [plaintiff] sought to secure the right to hold an appointed compensated position in the Chicago Teachers Union in the future and he sought to ensure that his reputation in the future would not be compromised by statements that the Chicago Teachers Union and the Defendants might make about him."

Notwithstanding the foregoing, defendants contend paragraph 2.1's "failure to account for the content and veracity of the publications is a strong indication that the damages are not reasonable, and that [the provision] is an unenforceable penalty." Defendants point to Med+Plus Neck & Back Pain Center, S.C. v. Noffsinger, 311 Ill. App. 3d 853 (2000). There, the plaintiff employer argued the liquidated

7

damages provision in its contract with the defendant employee was intended to recoup its costs to train the defendant in the event of a breach. Id. at 860. However, the liquidated damages amount actually decreased the longer the employee stayed with the employer. The trial court ruled the provision was unenforceable as a penalty. The appellate court affirmed, stating:

"The provision at issue is clearly a penalty and bears no relation to training costs at all. If defendant breached the contract on the very first day, plaintiff's cost to train him would have been almost nothing, yet defendant would be liable to pay plaintiff the full $50,000 under the liquidated damages provision. If defendant breached the contract on the last day, he would have been fully trained by plaintiff over the course of two years, yet he would be liable to pay plaintiff only $2,083 (or less) under the liquidated damages provision. Thus, the liquidated damages provision bears an inverse relation to the costs of training defendant–the more training he receives, the less he must pay under the provision. Accordingly, we find it to be a penalty clause and a mechanism designed to secure defendant's performance of the contract." Id. at 860-61.

In Med+Plus, the liquidated damages clause could only have been a penalty to secure the defendant's performance of the two-year contract, and not, as the plaintiff argued, a means of recouping training costs. The damages amount was at its peak if the defendant breached on the first day, when very little would have been spent on training; the damages decreased the longer the employee stayed with the employer. Here, by contrast, the liquidated damages amount was clearly related to the projected actual loss, as the circuit court indicated.

Defendants advance a second argument in support of their claim that the $100,000 damages amount in paragraph 2.1 is not reasonable and is instead a penalty. Defendants note that the $100,000

figure is a minimum rather than a fixed amount, and argue that it runs afoul of the rule that liquidated damages must be set at a specific amount for a specific breach. According to defendants, the $100,000 minimum, as opposed to a fixed amount, shows "there was no real attempt to fix damages at a reasonable and realistic sum."

Defendants rely on Grossinger Motorcorp, Inc. v. American National Bank & Trust Co., 240 Ill. App. 3d 737 (1992), where the contract provided that if termination was attributable to the plaintiff, "'the earnest money shall be forfeited to the [defendant] *** as liquidated damages, or at defendant's option, [defendant] may exercise any other remedy at law.'" Id. at 740. In holding this provision unenforceable, Grossinger focused on "the optional nature of the liquidated damages provision *** which allows defendant to seek actual damages or alternatively to retain the earnest money as liquidated damages." Id. at 752. The court stated: "On its face, the optional nature of the liquidated damages clause shows that the parties never intended to establish a specific sum to constitute damages in the event of a breach." Id. at 750.

In the case at bar, by contrast, paragraph 2.1 contains no such optional clause in the event of a breach. Instead, the parties agreed that a breach results in a minimum of $100,000 in damages, a specific number that plaintiff sought in this case. Defendants' reliance on Grossinger is misplaced.

Defendants also rely on Catholic Charities v. Thorpe, 318 Ill. App. 3d 304 (2000), and H&M Driver Leasing v. Champion, 181 Ill. App. 3d 28 (1989), neither of which is apposite to the case at bar. In Catholic Charities, the liquidated damages clause contained an optional provision which, as in Grossinger, allowed the seller to seek actual damages as an alternative to liquidated damages. In holding the provision unenforceable, the court pointed to the option to seek actual damages, which "reflects that the

9

parties did not have the mutual intention to stipulate to a fixed amount as their liquidated damages." Catholic Charities, 318 Ill. App. 3d at 313. Here, as noted, paragraph 2.1 contains no such optional language.

In H&M Driver Leasing, the contract provided for a specified amount of liquidated damages plus actual damages. The court reasoned: "Where a contract provides that the breaching party must pay all damages caused by the breach as well as a specified sum in addition thereto, the sum so specified can be nothing but security for performance and, therefore, constitutes an unenforceable penalty." Id. at 31. Here, there is nothing in the settlement agreement that would allow plaintiff to get liquidated damages in addition to actual damages.

We reject defendants' argument that the liquidated damages provision in paragraph 2.1 bears no reasonable relationship to the damages plaintiff might sustain, and is therefore unenforceable. Contrary to defendants, paragraph 2.1 meets the second element of the liquidated damages test. The amount provided as liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained. See Jameson Realty Group, 351 Ill. App. 3d at 423; Curtin, 75 Ill. App. 3d at 554-55.

Defendants argue in the alternative that even if the liquidated damages provision in paragraph 2.1 is enforceable, the circuit court misinterpreted it. Specifically, defendants contend the liquidated damages provision applies only to statements which disparage plaintiff, and not, as the circuit court implied, to the broader category of statements which concern−i.e., refer to−plaintiff. The interpretation of a contract involves a question of law, which we review de novo. Dowling v. Chicago Options Associates, Inc., 226 Ill. 2d 277, 285 (2007); Gallagher v. Lenart, 226 Ill. 2d 208, 219 (2007).

Defendants' argument is unpersuasive. While the liquidated damages provision in paragraph 2.1 does include within its scope statements which are "disparaging," it is not limited to such statements. Paragraph 2.1 clearly encompasses "any written or oral statement concerning [plaintiff] or the settlement in any [CTU] publications or publicly at any CTU or union event." This is the language employed in the settlement agreement, to which defendants expressly assented. In the absence of an ambiguity, "the intention of the parties at the time the contract was entered into must be ascertained by the language utilized in the contract itself, not by the construction placed upon it by the parties." Lenzi v. Morkin, 103 Ill. 2d 290, 293 (1984); accord Prairie Land Construction, Inc. v. Village of Modesto, 213 Ill. App. 3d 364, 370 (1991).

The circuit court correctly interpreted the liquidated damages provision, which is enforceable, and correctly found it was breached. The court correctly granted plaintiff's motion to enforce the agreement.

CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

---

### REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

THEODORE DALLAS,

      Plaintiff-Appellee,

    v.

CHICAGO TEACHERS UNION, MARILYN STEWART,
GAIL KOFFMAN and PATTI WALSH,

      Defendants-Appellants.

---

No. 1-10-0979

Appellate Court of Illinois
First District, Second Division

March 22, 2011

---

JUSTICE HARRIS delivered the opinion to the court.
Presiding Justice Cunningham and Justice Connors concurred in the judgment
   and opinion.

---

Appeal from the Circuit Court of Cook County.

The Honorable Dorothy K. Kinnaird, Judge Presiding.

---

Robin Potter & Associates, P.C., 111 East Wacker Drive, Suite 2600,
Chicago, IL 60601, (Robin Potter, Esq., of counsel), for APPELLANTS.

The Law Offices of Ruth I. Major, P.C., 225 West Washington, Suite 2200,
Chicago, IL 60606, (Ruth I. Major, Laura M. Rawski and John P. Chase,
of counsel), for APPELLEE.

1-10-0979